# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-70004

ANTHONY CARDELL HAYNES

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice, Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-3424

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

DENNIS, Circuit Judge:

This case involves an application for a certificate of appealability ("COA") filed by Petitioner Anthony Cardell Haynes ("Petitioner") to appeal the district court's denial of habeas corpus relief under 28 U.S.C. § 2254. Petitioner challenges the district court's denial of COA by asserting: (1) the district court erred in denying his COA sua sponte and preemptively; (2) the district court erred in finding Petitioner's ineffective assistance of counsel claims to be procedurally barred; (3) the district court abused its discretion in denying his motion to stay and abate proceedings so as to allow him the opportunity to exhaust his unexhausted claims in state court; (4) the State's prosecution

deliberately and purposefully used peremptory challenges to exclude African-Americans from the jury thereby violating his right to a jury process free from racial discrimination; and (5) Haynes's due process rights were violated because the state trial court was unconstitutionally biased against him. We find no reason to dispute the district court's assessment of Haynes's claims, except for Haynes's claim (4) with regards to two potential jurors. In light of the Supreme Court's recent decision in Snyder v. Louisiana, 128 S.Ct. 1203 (2008), we conclude that Haynes is entitled to a COA in connection with his Batson claims in respect to potential jurors Owens and McQueen. See Batson v. Kentucky, 476 U.S. 79 (1986).

## I. BACKGROUND

The district court set forth the relevant facts as follows:

At around 10:30 p.m. on May 22, 1998, off-duty Houston Police Department Officer Kent Kincaid and his wife left their home in a private vehicle on their way to meet some friends at a sports bar. As they drove past a truck driven by Haynes, something hit and cracked the Kincaid[s'] windshield. Officer Kincaid thought someone threw a rock at his car; Haynes had actually fired a shot at them. Officer Kincaid turned his car around and followed Haynes' vehicle until the two pulled alongside each other.

Officer Kincaid exited his vehicle, approached Haynes who remained sitting in his truck, and said "You hit my window." Haynes replied, "I accidentally threw something at your window." Officer Kincaid said, "I am a police officer. Let's talk about it." After asking for Haynes' license, [O]fficer Kincaid reached towards his back pocket, presumably to retrieve his police identification. Haynes lifted up a pistol, shot [O]fficer Kincaid in the head, and fled the scene. Officer Kincaid died a few hours later.

The police soon arrested Haynes. Haynes confessed to [O]fficer Kincaid's murder. The State of Texas charged Haynes with the capital murder of a peace officer who was "acting in the lawful discharge of an official duty[.]" Tex. Penal Code § 19.03(a) (1). A jury convicted Haynes of capital murder. After a separate punishment hearing, the jury answered Texas's special issues in a manner

requiring the imposition of a death sentence. Haynes unsuccessfully sought state appellate and habeas relief from his conviction and sentence.

Haynes v. Quarterman, No. 4:05-CV-3424, 2007 WL 268374, at *1 (S.D. Tex. Jan. 25, 2007) (internal footnotes omitted). The district court appointed counsel to help Haynes through the federal habeas process. Haynes filed a habeas petition on October 5, 2005, with the District Court for the Southern District of Texas. The district court denied habeas relief in an opinion on January 25, 2007. At the end of the extensive memorandum opinion, the district court appended a relatively short sua sponte denial of COA essentially reciting the standard of review and then concluding:

> Under the appropriate standard the court finds that Haynes has not shown that this court should certify any issue for appellate consideration. This court DENIES Haynes a COA on all the claims raised by his petition.

Id. at *37 (emphasis in original). Haynes now seeks a COA from this court to challenge the district court's denial of habeas relief.

## II. STANDARD OF REVIEW

A petitioner must obtain a COA before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (Miller-El I)(quoting 28 U.S.C. § 2253(c)(1)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). According to the Supreme Court, this requirement includes a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have

3

been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Id. at 484 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). As the Supreme Court explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the district court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

Miller-El I, 537 U.S. at 336-37.

In sum, Petitioner need not show that his habeas petition will ultimately prevail on the merits in order for this court to issue a COA. Id. at 337. In fact, the Supreme Court has specifically instructed that a court of appeals should not deny a COA simply because the petitioner has not demonstrated an entitlement to relief. Id. Instead, "'where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Id. at 338 (quoting Slack, 529 U.S. at 484). "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination." Shisinday v. Quarterman, 511 F.3d 514, 520 (5th Cir. 2007) (citing Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997)).

For claims that were adjudicated on the merits in state court, "[o]ur role is to determine not whether [petitioner] is entitled to relief, but whether the district court's conclusion that the state court adjudication was not contrary to

or an unreasonable application of clearly established federal law is one about which jurists of reason could disagree or as to which jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." Jackson v. Dretke, 450 F.3d 614, 616 (5th Cir. 2006).

## III.  ANALYSIS

A. Remand is Unwarranted To Correct Any Alleged Error in the District Court's Denial of COA

Haynes presents two independent arguments alleging error in the district court's sua sponte denial of COA. First, he contends the district court cannot sua sponte deny a COA, and second, he contends the district court did not provide a sufficient statement of reasons for its denial of COA.

The first argument is without merit.  We have clearly held that the district court's denial of COA sua sponte is "perfectly lawful." Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

In Alexander, we also suggested that a district court's sua sponte denial of COA was proper, in part, because "[the petitioner] points to no legal support for his contention that his rights were violated by the district court's sua sponte denial of COA without prior briefing and argument by counsel."  Id.  In his second argument, Haynes specifically contends that the district court's sua sponte denial violates the Federal Rules of Appellate Procedure Rule 22(b)(1) because it does not supply adequate individualized reasons for its denial. Haynes contends that because of this violation, the district court's sua sponte denial is improper.  Rule 22(b)(1) states, "[i]f an applicant files a notice of appeal, the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue." (emphasis added).  We have not explicitly ruled on what is required under Rule 22(b)(1), but other Circuit courts have rejected pro forma blanket denials.  In Herrera v. Payne, 673 F.2d 307, 307 (10th Cir. 1982), the Tenth Circuit vacated a blanket denial of a

COA even though the denial referred to the extensive analysis in the court's decision to deny habeas relief. See also Brown v. Booker, 622 F. Supp. 993, 994 & n.2 (E.D. Va. 1985). In accordance with the Tenth Circuit, the Sixth Circuit has more recently held in Murphy v. Ohio, 263 F.3d 466, 467 (6th Cir. 2001), that even after setting forth reasons denying habeas relief, the district court must also give individualized consideration to each claim under Slack, 529 U.S. at 483, in its denial of COA.

Even assuming arguendo that we should follow these persuasive authorities, and find that the district court violated Rule 22(b)(1) by not stating individualized reasons in its denial of COA,[1] Rule 22 does not necessarily require us to remedy a violation by vacating the district court's defective issuance or denial of COA and remanding the case back to the district court. See 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3968.1 n.8 (2d ed. 2007) ("Appellate Rule 22(b) does not provide any clear answer to the consequences of a district court's failure to provide an adequate statement of the reasons for denying a certificate of probable cause."). Other Circuit courts have indicated that an appellate court may choose to excuse a procedural violation with regards to an allegedly defective COA determination rather than remand the case and, thereby, delay appeals. See Davis v. Borgen, 349 F.3d 1027, 1028 (7th Cir. 2003) ("Only when the motion to vacate is made early enough to produce savings for the litigants - and even then only when issuance of the certificate was an obvious blunder, so that the court of appeals need not traverse the same ground twice . . . does it make sense to entertain a

---

[1] Some district courts in the Sixth Circuit consider short statements denying COA (which are substantively similar to the statement denying COA in this case) that are attached to a comprehensive memorandum justifying the denial of habeas relief as in full compliance with Murphy and Rule 22(b)(1). E.g., Robinson v. Hofbauer, No. 2:07-CV-134, 2008 WL 324217, at *2-3 (W.D. Mich. Feb. 5, 2008).

motion to vacate a certificate."); Frazier v. Huffman, 343 F.3d 780, 788-89 (6th Cir. 2003). In this case, the district court's memorandum opinion comprehensively explains the district court's rationale for denying habeas relief, and the memorandum opinion supporting the denial of habeas relief provides the reasons for the district court's denial of COA. Moreover, the parties have fully briefed the important issues on appeal. Accordingly, circumstances do not warrant vacating the district court's decision denying a COA, so we decline to do so. See Frazier, 343 F.3d at 788-89. Such a remedy would only delay the judicial process and frustrate the legislative purpose, i.e., facilitating appellate review, underlying the COA mechanism. See Davis, 349 F.3d at 1028.

B. District Court Did Not Err in Applying the Exhaustion Doctrine

"[F]ederal habeas petition[s] should be dismissed if state remedies have not been exhausted as to all of the federal court claims. . . . The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Smith v. Dretke, 422 F.3d 269, 275 (5th Cir. 2005) (internal citations omitted). Haynes presents no reason why the district court was incorrect in its conclusion that virtually all of his ineffective assistance of counsel claims were unexhausted. Thus, Haynes does not dispute the district court's conclusion that these claims are procedurally defaulted. Instead, he contends that three exceptions to exhaustion apply: (1) the successive state habeas application will be the first practicable opportunity to raise the ineffective assistance of counsel claims; (2) there is "cause and prejudice"; and (3) exemption from procedural default averts a "fundamental miscarriage of justice."

First, Haynes argues that because the state-appointed counsel in his first post-conviction proceeding was inadequate, he could not raise his claims in prior petitions. However, we have consistently noted that "alleged infirmities in state habeas proceedings are not grounds for federal habeas relief." Brown v. Dretke,

419 F.3d 365, 378 (5th Cir. 2005). In fact, in Elizalde v. Dretke, we rejected arguments identical to the arguments Haynes now raises. 362 F.3d 323, 329-31 (5th Cir. 2004) ("First, neither the Supreme Court, nor this court, has ever recognized that a state created obligation to provide effective assistance of counsel would make the State rather than the petitioner responsible for a procedural default, as might be the case if a federal constitutional right existed.").

Second, Haynes also asserts that the alleged ineffectiveness of state habeas counsel supports the "cause" prong of the "cause and prejudice" exception to procedural default, but again Elizalde and earlier precedent clearly foreclose this argument. 362 F.3d at 331; see also In re Goff, 250 F.3d 273, 276 (5th Cir. 2001) ("[T]he Supreme Court has spoken quite explicitly . . . and has repeatedly emphasized that ineffective assistance of counsel in a post-conviction proceeding cannot serve as cause to excuse default in a federal habeas proceeding.").

Third, Haynes argues that his trial counsel's alleged failure to present significant mitigation evidence for the jury's determination of Texas's special issues is evidence of "actual innocence." A claim of "actual innocence" can excuse the exhaustion requirement so as to avert a "fundamental miscarriage of justice." Wilkerson v. Cain, 233 F.3d 886, 889 (5th Cir. 2000) (quoting Schulp v. Delo, 513 U.S. 298, 321 (1995)). However, in Sawyer v. Whitley, 505 U.S. 333, 347 (1992), the Supreme Court stated: "the 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error." The evidence that was allegedly not presented during Haynes's sentencing deals exclusively with mitigating evidence and this evidence does not show that Haynes was actually

innocent of a death-eligible offense.[2]  Accordingly, Haynes presents no valid argument that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong so as to overcome the procedural bar.[3]

## C. District Court Did Not Abuse Its Discretion In Denying Stay and Abeyance

Haynes argues that the district court abused its discretion in denying a stay and abeyance that would have allowed him an opportunity to exhaust his unexhausted state claims.

According to the Supreme Court, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition." Rhines v. Weber, 544 U.S. 269, 278 (2005).  The Supreme Court in Rhines also stated that "stay and abeyance should be available only in limited circumstances." Id. at 277.

---

[2]  Haynes asserts in his reply-brief that the police officer-victim was "off-duty" at the time of shooting and therefore Haynes is not guilty of capital murder. It is clear that evidence, considered in a light most favorable to the verdict, supports the capital murder conviction because murder of off-duty policemen in the "lawful discharge of [their] duties" is death penalty-eligible.  Moore v. State, 999 S.W.2d 385, 404 (Tex. Crim. App. 1999). As in Moore, evidence here shows the defendant was aware that the victim was a police officer before murdering him.  Haynes does not present any new evidence in his motion for COA supporting this claim of "actual innocence"; he does not even present any new evidence that persuasively refutes evidence supporting the conviction.

[3]  Haynes's argument that he must be accorded an evidentiary hearing to assess his "cause and prejudice" claim is without merit.  As the Eleventh Circuit held in the case he cites, Williams v. Turpin, 87 F.3d 1204, 1211 (11th Cir. 1996), "[petitioner] is entitled to an evidentiary hearing for purposes of establishing cause and prejudice if he has proffered specific facts sufficient to support such a finding." (emphasis added).  Similarly, we have stated, "[petitioner's] conclusory allegations are insufficient to require either discovery or an evidentiary hearing, and the district court did not abuse its discretion in denying [petitioner's] request for the same." Murphy v. Johnson, 205 F.3d 809, 817 (5th Cir. 2000).  Here, Haynes' facts and allegations are clearly insufficient as a matter of law to require more discovery.

Even assuming arguendo there is "good cause," Haynes' unexhausted claims have no potential merit.  Id. at 278 (noting that a district court would abuse its discretion in denying a stay for unexhausted claims that are "potentially meritorious.").  Haynes predicts the Texas courts would grant him the opportunity to pursue a successive habeas petition despite failing to assert his claims in a previous petition.  He contends that the Texas courts would not deny his successive habeas petition as an "abuse of the writ," because the Texas Code of Criminal Procedure article 11.071 section 5(a)(3) permits successive applications for post-conviction relief if the petition presents "sufficient specific facts" that establish "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial."  Haynes argues that this provision applies to his claims, because additional mitigating evidence for the special issues was not presented due to alleged ineffectiveness of counsel.

Under the Texas case-law, his argument is without merit.  In interpreting this provision, the Texas Court of Criminal Appeals denied permission for filing a successive state application because "[a]t best, applicant's claim would establish that the jury might have answered a special issue differently, not that it would have done so."   Ex parte Hood, 211 S.W.3d 767, 774 (Tex. Crim. App. 2007).  Consistent with this holding, the Texas Court of Criminal Appeals has also construed section 5(a)(3) as analogous to the federal "actual innocence" exception to exhaustion.  The court in Ex parte Blue, 230 S.W.3d 151, 160-61 (Tex. Crim. App. 2007) has stated:

> [The Supreme Court in Sawyer v. Whitley] has expressly rejected the argument that a constitutional error that impacts only the jury's discretion whether to impose a death sentence upon a defendant who is unquestionably eligible for it under state law can be considered sufficiently fundamental as to excuse the failure to raise it timely in prior state and federal proceedings.  Section 5(a)(3) of

10

Article 11.071 represents the Legislature's attempt to codify something very much like this federal doctrine of "actual innocence of the death penalty" for purposes of subsequent state writs. By tying the exception to the general prohibition on subsequent state writs specifically to the statutory special issues in Article 37.071 of the Code of Criminal Procedure, the Legislature apparently intended to codify, more or less, the doctrine found in Sawyer v. Whitley. This reading of the exception seems to limit its applicability to constitutional errors that affect the applicant's eligibility for the death penalty under state statutory law.

Here, Haynes alleges that mitigating evidence could have influenced the jury's discretion but does not argue that evidence not presented due to alleged ineffective assistance of counsel would render him ineligible for the death penalty. Therefore, he has no meritorious argument that the Texas Court of Criminal Appeals would allow him to file a successive application for post-conviction relief even if the district judge granted a stay and abeyance. Accordingly, the district court did not abuse its discretion.

D. Reasonable jurists would find the District Court's assessment of the Batson claims debatable

Haynes requests this court to grant a COA for his claim that the state prosecution based its use of peremptory challenges in jury selection on impermissible racial characteristics in violation of equal protection as articulated in Batson, 476 U.S. at 95-98. Three steps are involved in a Batson challenge:

The Supreme Court has outlined a three-step process for determining whether peremptory strikes have been applied in a discriminatory manner. First, the claimant must make a prima facie showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination.

United States v. Bentley-Smith, 2 F.3d 1368, 1373 (5th Cir. 1993). The State does not dispute that, in respect to four prospective jurors, the defendant made a prima facie showing that the peremptory challenges had been exercised on the basis of race. However, the State contends that after succeeding in the first Batson step, the defendant's claim falters. Accordingly, our analysis proceeds directly to Batson's second and third steps regarding those four prospective jurors.

At the outset, however, it should be noted, that two different state trial judges took turns in presiding over the jury selection process in this case. Judge Wallace presided at the beginning of the jury selection process when the jurors were addressed and questioned as a group; Judge Harper presided during the next stage in which the attorneys questioned the prospective jurors individually; and Judge Wallace presided again during the final stage in which peremptory challenges were exercised and when Batson challenges were made, considered and ruled upon. Thus, Judge Wallace, who ruled upon the Batson challenges was not presiding when the prosecutor determined the demeanor of the prospective jurors in responding to individual questioning.[4]

Haynes is African-American. Of the fifty people in the venire, six of the seven African-Americans appeared for voir dire. Of those six, the prosecution struck four, and the defense struck one. One African-American juror was seated on the jury. The four African-Americans peremptorily challenged by the prosecution were: Twanna Kirkling, Melba Goodman, L.V. McQueen, and Betty Owens. For each strike, the prosecution offered an explanation.

---

[4] Although Judge Wallace also presided when the jurors were addressed and questioned as a group at the beginning of the jury selection process, the record reflects that only Judge Hughes presided during the proceedings at which the attorneys examined and determined the demeanor of the prospective jurors individually. Moreover, the prosecutor's peremptory challenge explanations refer to the prospective jurors' demeanor and answers during individual questioning and not their demeanor and answers during group questioning.

For Twanna Kirlking, the prosecution stated that "during her interview, she said capital punishment was a last resort, meaning several times she hesitated in responding to the questions about the death penalty." The prosecution also added that she "looked at capital punishment . . . as a necessary evil" and "avoided giving any direct position on capital punishment that it was a viable object for the State and, furthermore, she stated that life, 40 [years], is a justifiable punishment." The defense counsel objected noting that other jurors also articulated the "necessary evil" view.

For Melba Goodman, the prosecutor said that from his "impression of the interview," he thought "[s]he opposed death punishment [and] [s]he refused to answer questions about capital punishment." The prosecution added, "[s]he reluctantly agree[d] that capital punishment for [the murder of] police officers should be available [and] [s]he also demonstrated through her demeanor that she was very anti-capital punishment." The defense did not dispute this explanation at that time.

For L.V. McQueen, the prosecution said, "when questioned, M[r]. McQueen would give me all the indications that in responses to my questions by the language of demeanor that he was very weak on the death punishment . . . and stated that there were some cases that I could not give a death sentence even if the law permitted such." The defense counsel indicated that in McQueen's jury questionnaire, he had showed support for the death penalty.

For Betty Owens, the prosecution stated that "this lady's demeanor was . . . somewhat humorous [and] [s]he never did really take on a serious attitude during the interview." The prosecution added, "[s]he would say one thing but her body language would indicate that this is not her true feeling." The prosecutor also indicated that he thought because the defendant's trial counsel spent little time with her, the trial counsel was pleased with her and, therefore, she would "certainly be leaning toward a life sentence." Defense counsel objected

noting that Owens's jury questionnaire suggested that she would favor the prosecution and her answers indicated impartiality.

Regarding the second step of the Batson analysis, Judge Wallace accepted each of these explanations as "race-neutral" without any specific findings. Because Judge Wallace was not present when the prospective jurors were individually questioned at voir dire, it arguably follows that he was not able to credit the prosecutor's assertions that his peremptory challenges were based on the jurors' demeanor during individual voir dire rather than their race. In an analogous context in Snyder v. Lousiana, 128 S. Ct. 1203, 1207-09 (2008), the Supreme Court rejected the State's argument that the prosecutor's peremptory challenge was validly based on a prospective juror's nervousness for the reason that the record did not reflect whether the trial court, in allowing the challenge, had noted, recalled or made a determination as to the juror's demeanor. Because the trial court in Snyder simply accepted the explanation as race-neutral and allowed the challenge without stating any reason, the Supreme Court discounted the possibility that the trial court could have based its "race-neutral" determination on the prosecution's "demeanor" explanation even under a highly deferential "clear error" standard. Id. The Supreme Court explained:

> With respect to the [demeanor] reason, the Louisiana Supreme Court was correct that "nervousness cannot be shown from a cold transcript, which is why . . . the [trial] judge's evaluation must be given much deference." 942 So. 2d, at 496. . . . [D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not show that the trial judge actually made a determination concerning [prospective juror] Mr. Brooks' demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge without explanation. It is possible that the judge did not have any impression one way or the other concerning Mr. Brooks' demeanor. Mr. Brooks was not challenged until the day after he was

14

> questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled Mr. Brooks' demeanor. Or, the trial judge may have found it unnecessary to consider Mr. Brooks' demeanor, instead basing his ruling completely on the second proffered justification for the strike. For these reasons, we cannot presume that the trial judge credited the prosecutor's assertion that Mr. Brooks was nervous.

Id. at 1209. Under Snyder's application of Batson, therefore, an appellate court applying Batson arguably should find clear error when the record reflects that the trial court was not able to verify the aspect of the juror's demeanor upon which the prosecutor based his or her peremptory challenge.

Consequently, we conclude that the district court arguably erred in finding that the state courts properly relied upon the prosecution's "demeanor" explanations for its peremptory challenges of jurors McQueen and Owens. Acknowledging the lack of support in the written record for finding that McQueen was biased against the prosecution or the death penalty, the district court found that the "prosecution's justification for striking [McQueen] . . . focused on his demeanor. . . suggesting that the record possibly belies his feelings as manifested through his in-court deportment." Haynes, 2007 WL 268374, at *16 n.9. Further, in respect to Owens, the district court deferred to the Texas Court of Criminal Appeals' reliance on the prosecutor's allusion to Owens's demeanor as the sole justification for finding that the prosecution's peremptory challenge of her was "race neutral." Haynes, 2007 WL 268374, at *16; see also Haynes v. Texas, No. 73, 685, slip. op. at 16 (Tex. Crim. App. Oct. 10, 2001) (relying solely on demeanor in determining if the trial judge's acceptance of the State's explanation as "race-neutral" for striking Owens was not clearly erroneous).

However, Judge Wallace, the state trial judge who upheld the peremptory challenges of McQueen and Owens, could not have possibly credited the prosecutor's assertion that they were struck because of their demeanor during

15

individual questioning; Judge Wallace did not preside during the individual examination of the jurors. Synder, 128 S. Ct at 1209. Further, the district court did not find another credible non-racial explanation that could justify the state courts' determination that the peremptory challenge of Owens and McQueen was "race-neutral." Thus, arguably, the State has failed to satisfy Batson's second step. Accordingly, in light of the Supreme Court's decision in Snyder, which applied its understanding of Batson to a similar factual issue, reasonable jurists may debate whether the district court could have resolved Haynes's Batson claims in respect to Owens and McQueen differently. See Abu-Jamal v. Horn, Nos. 01-9014, 02-9001, 2008 WL 793877, at *8 (3d Cir. Mar. 27, 2008) (using Snyder as guidance for how to apply Batson in state habeas case). Furthermore, as this is a capital case, doubts about granting a COA should be strongly resolved in favor of the petitioner. ShisInday, 511 F.3d at 520 ("Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination.").

The district court and the state courts' analyses of the prosecutor's explanations for challenging the other two potential African-American jurors (Goodman and Kirkling) did not rely on "demeanor." Instead, the State's explanations focused on their reluctance to impose the death penalty in their on-the-record answers to individual questioning at voir dire. Unlike the "demeanor" explanation, these explanations can be verified by the written record.

In respect to Goodman, we do not find the district court's determination to be debatable. In United States v. Arce, 997 F.2d 1123, 1126-27 (5th Cir. 1993), we noted that a district court can accept the prosecution's race-neutral explanation if the explanation is facially valid and the defendant did not object below. "By failing to dispute the Government's explanations, [defendants] appeared to acquiesce in them. As a result, there was no need for the district

judge to make a ruling." Id. at 1127 (quoting United States v. Rudas, 905 F.2d 38, 41 (2d Cir. 1990)). Likewise, since the defendant similarly acquiesced in the present case, the district court could properly accept the state trial court's acceptance of the prosecutor's explanation as race-neutral. Moreover, the record supports the determination that the explanation was race-neutral. Goodman did waffle on whether she considered the murder of a police officer to be a capital offense. Furthermore, the district court's decision in respect to Goodman is supported by the same reasons we assign and explain more fully regarding Kirkling below.

Prospective juror Kirkling stated during voir dire that she thought "to sentence someone to death is a last resort" and that the sentence of death would be applied if there is "not a possibility of redemption, of improvement on that person." She also admitted to "hesitation" in imposing the death penalty. As the prosecution presents a valid and acceptable race-neutral explanation, i.e., answers evincing a reluctance to impose the death penalty, "the question presented at the third stage of the Batson inquiry is 'whether the defendant has shown purposeful discrimination.'" Snyder, 128 S. Ct. at 1212 (quoting Miller-El v. Dretke, 545 U.S. 231, 277 (2005) (Miller-El II)). As evidence of discrimination, Haynes alleges the disparate treatment of jurors of different races. He contends the non-African American jurors were primarily asked only "yes and no" narrative questions while the four African-American jurors were asked more probing questions. The alleged disparate questioning is not reflected in the record.[5] Even assuming arguendo the prosecutors' questioning was inconsistent,

---

[5] For example, the prosecution similarly probed non-challenged jurors about their attitudes toward the death penalty and the case in general, including Betty Pickens Hayter, Gwendolyna Freeman, Josh Flynn, etc. There is no evidence that shows narrative questions resulting in "yes and no" answers were used exclusively with non-African-American jurors.

> [petitioner] did not show that the State's individualized reasons for peremptorily striking each African-American venireperson at issue were actually a pretext for racial discrimination or that any alleged disparate questioning did not result from reasons other than race.

Murphy v. Dretke, 416 F.3d 427, 438 (5th Cir. 2005). Difference in treatment between jurors of different races may be one factor but is not dispositive of pretext and racial discrimination. See United States v. Webster, 162 F.3d 308, 350 (5th Cir. 1998) (noting that "[the jurors] had different combinations of qualities, and some had more government-desired qualities than did the jurors the government preempted."). The record evinces Kirkling's acknowledged hesitation with regards to using the death penalty. This is not a case in which "[t]he State's attempt at a race-neutral rationalization thus simply fails to explain what the prosecutors did." Miller-El II, 545 U.S. at 260. Based on the review of Haynes' allegations as to Kirkling, without any direct evidence of discrimination inherent in the explanation, there is no debate that we must take the explanation as to Kirkling as race-neutral without purposeful discrimination:

> Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Petitioner does not point to anything said by the prosecutor in the prosecutor's justification of the challenged strikes that even hints at an inherent discriminatory intent.

Medellin v. Dretke, 371 F.3d 270, 279 (5th Cir. 2004) (internal quotations and citations omitted). Unlike Miller-El I, 537 U.S. at 345-46, Haynes does not assert any persuasive evidence to suspect the explanation as to Kirkling is a pretext for racial discrimination, such as procedural irregularities, e.g., jury shuffling, a history of discrimination, or any similar evidence. Moreover,

> all that a prosecutor need offer is a facially valid explanation. . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. . . .

> Accordingly, a legitimate reason is not a reason that makes sense, but a reason that does not deny equal protection. In the instant case, the prosecutor articulated specific conduct on the part of the potential jurors which the district court found legitimate. We do not intend to disturb such a finding.

United States v. Kelley, 140 F.3d 596, 606-07 (5th Cir. 1998). No reasonable jurists would debate the district court's findings as to Kirkling and Goodman.

However, as noted earlier, in light of Snyder, reasonable jurists may debate whether the district court's conclusions as to McQueen and Owens are correct and whether the state courts' applications of Batson as to those two jurors were unreasonable. "'[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose.'" Snyder, 128 S. Ct. at 1208 (quoting United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994)).

E. No reasonable jurists would find the District Court's assessment of the allegations of unconstitutional judicial bias debatable or wrong

Finally, Haynes also requests this court to grant a COA for his claim that the state court trial judge was unconstitutionally biased against his trial counsel. At one point in the trial, Haynes's trial counsel remained standing and continued to request a ruling even after the trial judge had asked him to sit down, and the trial judge then said: "You have one second to sit down or I'll remove you from the courtroom. Do we understand each other?" Haynes now alleges this act so intimidated his trial counsel that he failed to pursue any further objections for the balance of the trial.

At the end of the trial, his trial counsel filed a motion for a new trial based, in part, on the claim that he was barred from rendering effective assistance of counsel. The trial court held a hearing on that claim. At the hearing, the trial court judge noted that he never told the trial counsel to remain silent throughout the whole trial, but only told the trial counsel to sit down at that particular

moment. The Texas Court of Criminal Appeals also did not find any improper bias.

We agree. As the Supreme Court has stated, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky v. United States, 510 U.S. 540, 555 (1994). The Court continued:

> Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune.

Id. at 555-56. We have refused to find reversible bias in more serious situations. See, e.g., Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 580-81 (5th Cir. 2005) (refusing to find bias even when the judge labeled the pending lawsuit "a campaign of terror"). Accordingly, we conclude that no reasonable jurist would find the district court's assessment of the judicial bias claim debatable or wrong.

## IV. CONCLUSION

For the foregoing reasons, the application for a COA is denied as to all issues except for Haynes's Batson claims with regards to jurors Owens and McQueen. Accordingly, a COA is GRANTED as to (1) whether the prosecution violated his rights under the Sixth and Fourteenth Amendments through the racially discriminatory use of its peremptory challenge as to potential juror Owens; and (2) whether the prosecution violated his rights under the Sixth and Fourteenth Amendments through the racially discriminatory use of its peremptory challenge as to potential juror McQueen.