IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-70015

TERRY LEE HANKINS

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:04-CV-875-Y

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Petitioner Terry Lee Hankins ("Petitioner") seeks a certificate of appealability ("COA") and permission to appeal the district court's denial of habeas corpus relief under 28 U.S.C. § 2254. Petitioner asserts that: (1) the district court erred in denying his ineffective assistance of counsel claims when his counsel failed to properly and adequately present mitigating evidence from Petitioner's childhood; failed to employ an expert to gather, analyze, and present

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the mitigating evidence; failed to have Petitioner tested by a qualified forensic psychologist; and failed to object to the court's jury instruction on mitigation; (2) the district court erred in ruling that the jury instruction on the mitigation issue did not violate the Eighth and Fourteenth Amendments; (3) Article 37.071(2)(e)(1) of the Texas Code of Criminal Procedure, relating to mitigation, is unconstitutional because it does not place a burden of proof on the state; and (4) the lethal injection method of execution used by the State of Texas violates the Eighth Amendment. We conclude that reasonable jurists would not disagree with the district court's assessment of Petitioner's claims, and we deny Petitioner's request for a COA.

I.

Petitioner was convicted by a jury of the capital murders of two of his wife's children, and his punishment was assessed at death by lethal injection. Petitioner appealed the conviction to the Texas Court of Criminal Appeals, which affirmed the conviction, and the United States Supreme Court denied certiorari.[1] Petitioner filed a state application for writ of habeas corpus, which was denied by the state court. That denial was also affirmed by the Texas Court of Criminal Appeals.

Petitioner then petitioned the federal district court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, contending that his conviction and sentence are unconstitutional in several respects. The district court denied the petition for a writ of habeas corpus and also declined to issue a COA.

The gruesome facts adduced in this case will not be recounted here in full. Suffice it to say, the state produced overwhelming evidence at the guilt phase of the trial establishing that Petitioner killed his wife, Tammy Hankins, and her two children, Kevin Galley and Ashley Mason. He left the naked bodies of the

---

[1] See Hankins v. State, 132 S.W.3d 380 (Tex. Crim. App.), cert. denied, 543 U.S. 944 (2004).

children and the body of their mother in the trailer in which they lived. There was also evidence that Petitioner engaged in sexual activity with and around the dead bodies. In the punishment phase of the trial, Petitioner also confessed to killing his half-sister, Pearl Sevenstar, with whom he fathered a son. He lied to others about his sister's whereabouts, saying that he had sent her to a home for pregnant mentally-challenged women, when in fact he had stored her dead body in a plastic container. He also admitted to killing his father, Earnie Hankins. He told people his father had moved out of state, when in fact his father's mummified remains were in his trailer surrounded by air fresheners. The defense counsel called several mitigating witnesses. We will discuss that testimony below.

## II.

Petitioner must obtain a COA before he can appeal the district court's denial of habeas relief.[2] "This is a jurisdictional prerequisite because the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"[3] According to AEDPA, a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right."[4] This standard requires a showing that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

---

[2] 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from — the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court.").

[3] Haynes v. Quarterman, 526 F.3d 189, 192 (5th Cir. 2008) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)(1))).

[4] 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 483 (2000).

presented were 'adequate to deserve encouragement to proceed further.'"[5]  This determination "requires an overview of the claims in the habeas petition and a general assessment of their merits."[6]

The Supreme Court has explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits.  We look to the district court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason.  This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it.  When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.[7]

In sum, Petitioner need not show that the appeal will ultimately succeed.[8]  Instead, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[9]  "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this

---

[5] Miller-EI, 537 U.S. at 336 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)); Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000).

[6] Miller-EI, 537 U.S. at 336.  In order to be entitled to relief on the merits, Petitioner must show that the state court's adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

[7] Haynes, 526 F.3d at 192–93 (citing Miller-EI, 537 U.S. at 336–37).

[8] Miller-EI, 537 U.S. at 377 (citing Barefoot, 463 U.S. at 893 n.4); see also Slack, 529 U.S. at 484.

[9] Haynes, 526 U.S. at 193 (citing Miller-EI, 537 U.S. at 338).

determination."[10] With regard to claims adjudicated on the merits in state court, "'[o]ur role is to determine not whether [Petitioner] is entitled to relief, but whether the district court's conclusion that the state court adjudication was not contrary to or an unreasonable application of clearly established federal law is one about which jurists of reason could disagree or as to which jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further.'"[11]

III.

A.

First, Petitioner contends that his counsel was ineffective because counsel should have presented at his trial all of the detailed mitigating facts submitted with his state habeas petition.  Second, Petitioner argues that counsel should have employed a "mitigation specialist" to conduct the mitigation investigation rather than conducting it themselves.  Third, Petitioner argues that counsel should have had him tested by a qualified forensic psychologist.  For these three reasons, Petitioner alleges that counsel provided ineffective assistance in violation of  the Sixth Amendment, with respect to the mitigation issue.

The Sixth Amendment guarantees a defendant in a criminal case reasonably effective assistance of counsel.[12]  The standard against which counsel is measured is set forth in Strickland v. Washington.[13]  Petitioner must establish

> (1) that counsel's performance was deficient in that it fell below an
> objective standard of reasonable professional service; and (2) that

---

[10] ShisInday v. Quarterman, 511 F.3d 514, 520 (5th Cir. 2007) (citing Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997)).

[11] Haynes, 526 F.3d at 193 (quoting Jackson v. Dretke, 450 F.3d 614, 616 (5th Cir. 2006)).

[12] Thomas v. Lynaugh, 812 F.2d 225, 229 (5th Cir. 1987) (citing Cuyler v. Sullivan, 446 U.S. 335, 344–45 (1980)).

[13] 466 U.S. 668 (1984).

this deficient performance prejudiced the defense such that there is a reasonable probability that the outcome of the trial has been undermined and the result would have been different.[14]

"Judicial scrutiny of counsel's performance must be highly deferential,"[15] and counsel's performance is subject to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[16] The prejudice component of the Strickland test focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."[17]

As to the first and second issues, the district court, agreeing with the state habeas court, concluded that the evidence which was presented to the jury on the mitigation issue was sufficient. It reasoned that much of the evidence Petitioner complains was not presented was either redundant or was closely related to evidence that was presented. The state court found that other evidence could not be presented because certain witnesses refused to testify and because Petitioner declined to have them subpoenaed.[18] Additionally, some evidence could only have been presented if Petitioner had agreed to testify.

The district court noted that seven family members and friends, three officers from the Tarrant County jail, and a clinical psychologist and former

---

[14] Thomas, 812 F.2d at 229 (citing Strickland, 466 U.S. at 697–98).

[15] Strickland, 466 U.S. at 689.

[16] Id.

[17] Williams v. Taylor, 529 U.S. 362, 393 n.17 (2000) (internal citations and quotations omitted).

[18] Petitioner's step-mothers refused to testify, and Petitioner declined counsel's offer to subpoena them.

employee of the Texas Department of Criminal Justice testified during the punishment phase of the trial. Additionally, a spiral notebook in which Petitioner made notes about his personal background was admitted into evidence. This evidence clearly demonstrated that Petitioner endured verbal and physical abuse from his father (who also kept him from his mother as a child), was involved in incestuous relationships, was raised in poverty, abused drugs and alcohol, had physical handicaps for which he was teased as a child, and completed school only through the ninth grade. Petitioner's mother also testified that Petitioner's father physically abused her and threatened to kill her and that she abused alcohol when Petitioner was young.

Petitioner claims that counsel should have presented certain other evidence to the jury. Although some evidence of each of these issues was presented, he argues counsel should have presented further evidence of: substance abuse by his mother and other family members, his father's abuse of his mother, his being kept away from his mother by his father, his physical deformities, the history of incest in his family, the poverty in which he was raised, his poor relationships with other family members, his own substance abuse, and his troubled school-life.[19] We agree with the state habeas court and district court that additional evidence on these issues would not have made a difference.

The state habeas court determined that although not all evidence from counsel's investigation was presented, counsel employed sound trial strategy and presented all evidence they believed would be favorable to Petitioner. The state

---

[19] The mitigating evidence Hankins complains his counsel did not produce at trial was provided to the state habeas court through the report of a court-appointed forensic psychologist, Dr. Kelly Goodness. The psychologist, in turn, obtained some of this information from Hankins, and Petitioner did not establish what witnesses would have provided this information at trial, except to argue that counsel could have had a psychologist testify. We conclude supra however, that the state and district courts did not err in concluding that counsel's decision not to have a psychologist testify was sound trial strategy.

habeas court also found that counsel did an adequate job investigating, and there was no requirement that a mitigation specialist be hired. The district court agreed with the state habeas court and concluded that it was not error under Strickland for counsel to decline to present redundant evidence, to subpoena witnesses over Petitioner's direction not to do so,[20] or to decline to call Petitioner as a witness because it would have opened him up to damaging cross examination about his numerous, revolting violent criminal acts.

Regarding Petitioner's argument that counsel should have had him tested by a qualified forensic psychologist, the district court explained that counsel had retained a psychiatrist who examined Petitioner and recommended that he not be psychologically tested because the results would be harmful to his case. The district court determined under Strickland that counsel's decision not to have Petitioner tested by a psychologist was an informed decision based on sound trial strategy because it prevented the state from having its own psychologist examine Petitioner and offering evidence based on an independent mental health expert examination.[21]

Our review of the record persuades us that reasonable jurists would not disagree with the state court and the district court's application of Strickland on these three points. Reasonable jurists would agree that counsel performed within the wide range of reasonable professional assistance for the reasons just stated. The district court also agreed with the state court that with the extensive aggravating evidence adduced at trial, there was no reasonable

---

[20] See United States v. Masat, 896 F.2d 88, 92 (5th Cir. 1990) (declining to permit a defendant to avoid conviction on the ground that his lawyer did exactly what he asked him to do); see also Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

[21] See Williams v. Lynaugh, 809 F.2d 1063, 1067–69 (5th Cir. 1987) (state can present psychiatric testimony in rebuttal if defendant first introduces psychiatric evidence on the issue of future dangerousness or insanity).

probability that further evidence of Petitioner's abusive upbringing and testimony from a psychologist that he was a substance abuser with an anti-social personality disorder would have resulted in a life sentence. We are satisfied that jurists of reason would not disagree.[22]

B.

Petitioner argues next that he is entitled to relief because of an erroneous jury instruction. At the punishment phase of the trial, the following instruction was given to the jury:

> In deliberating on Special Issue No. 1 and Special Issue No. 2, the jury shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

The relevant Texas statute provides that such a charge shall be given to the jury with respect to the first special issue, concerning "future dangerousness," but not the second special issue, concerning whether mitigating evidence exists such that a defendant should receive life imprisonment instead of the death penalty.[23] As to the future dangerousness special issue, Texas law provides:

> The court shall charge the jury that: . . . in deliberating on the issues submitted under Subsection (b) of this article, it shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.[24]

---

[22] See Russell v. Lynaugh, 892 F.2d 1205, 1213 (5th Cir. 1989) (finding no ineffective assistance where counsel did not present character witnesses "[g]iven the weakness of such testimony when juxtaposed with the overwhelming evidence of guilt, the horrifying nature of the crime, and the abundant impeachment material available to the state.").

[23] See TEX. CODE CRIM. PROC. Art. 37.071 §§ (2)(b), (2)(d)(1) (Vernon 1991).

[24] Id. at § (2)(d)(1).

As to the mitigation issue special issue, however, Texas law instructs that:

> The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of this article, it shall answer the following issue: Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.[25]

Petitioner objects to the instruction given to the extent that it directs the jury to consider evidence that militates in favor of the death penalty during the jury's consideration of the mitigation issue. Petitioner contends that the court violated the Eighth and Fourteenth Amendments by giving this jury instruction and that his Sixth Amendment rights were violated because counsel did not object to the instruction.

The state habeas court, in considering these claims, concluded that the jury instruction did not violate the Eighth or Fourteenth Amendments. The court reasoned that although the Constitution requires that a capital jury be given a vehicle to consider relevant mitigating evidence, it does not require that jurors be given an opportunity to consider mitigating evidence apart from all other evidence adduced at trial. The federal district court determined that the state habeas court did not err in this conclusion.

Petitioner argues that the jury should have been able to consider mitigating evidence in isolation from evidence of aggravating circumstances, and thus the Eighth and Fourteenth Amendments were violated. But, "[t]he Supreme Court has never precluded the use of aggravating circumstances as

---

[25] Id. at § (e)(1).

part of the process of an individualized determination of culpability," that is, "whether a defendant should in fact receive a death sentence 'on the basis of the character of the individual and the circumstances of the crime.'"[26] The Supreme Court has explained:

> Petitioner suggests that the jury must have freedom to decline to impose the death penalty even if the jury decides that the aggravating circumstances 'outweigh' the mitigating circumstances. But there is no such constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence . . . .[27]

The district court in this case aptly noted: "The fact that the challenged jury instruction was not the one provided for in the relevant Texas statute does not render it unconstitutional."[28] Based on the above authorities, we are satisfied

---

[26] Mosley v. State, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998) (quoting Tuilaepa v. Ca., 512 U.S. 967, 971–74 (1994)).

[27] Boyde v. California, 494 U.S. 370, 377 (1990). See also Franklin v. Lynaugh, 487 U.S. 164, 179 (1988) (the Supreme Court has never held that a specific method for balancing mitigating and aggravating factors in capital sentencing is constitutionally required); Zant v. Stephens, 462 U.S. 862, 890 (1983). Additionally, The Texas Court of Criminal Appeals has squarely stated that
> [T]he mitigation issue does not require the jury to consider or find any aggravating circumstances . . . . While the[] cases have some language indicating that the mitigation question does not involve aggravating circumstances, such language should properly be viewed as simply observing that the issue does not require their consideration. Such an observation does not, however, preclude permitting the jury to consider aggravating factors in making its evaluation. We disavow any language in those cases that suggests otherwise . . . . In determining whether to dispense mercy to a defendant after it has already found the eligibility factors in the State's favor, the jury is not, and should not be, required to look at mitigating evidence in a vacuum . . . []consistent with Supreme Court precedent.
Mosley, 983 S.W.2d at 263 n.18 (emphasis in original)(citations omitted).

[28] Petitioner also contends in his brief to this Court that the instruction violated Texas law, but to be cognizable on federal habeas, there would have to have been a violation of a federal right. See Smith v. McCotter, 786 F.2d 697, 702–03 (5th Cir. 1986) (citing Baldwin v. Blackburn, 653 F.2d 942, 948 (5th Cir. 1981), cert. denied, 456 U.S. 950, reh'g denied, 457 U.S. 1112 (1982) (holding that a failure to comply with state law requirements presents a federal habeas issue only if it involves federal constitutional issues)). Thus, to the extent that

11

that reasonable jurists would not disagree that the jury instruction did not violate the Eighth or Fourteenth Amendments.[29]

As to Petitioner's Sixth Amendment claim based on counsel's failure to object to the instruction, the Texas Court of Criminal Appeals, adopting the findings of fact and conclusions of law of the lower court, concluded that the jury instruction was not erroneous and that trial counsel was not deficient in failing to object to this jury charge because such an objection would have been overruled. The state habeas court further concluded that, given the amount and type of evidence presented at trial, Petitioner had failed to establish a reasonable probability that, had an objection been made and sustained, the result of the trial would have been different. The district court agreed, explaining that Petitioner did not establish prejudice due to counsel's failure to object to the charge. Given the vast evidence of Petitioner's heinous acts, reasonable jurists would agree that had the jury been instructed to only consider mitigating evidence in deciding the mitigation special issue no reasonable probability exists that the jury would have answered the mitigation question in the affirmative, thereby reducing his sentence to a life sentence.

C.

Petitioner also argues that a lack of adequate mitigation evidence to avoid a death sentence must be established by the state by proof beyond a reasonable doubt. The Texas Code of Criminal Procedure Article 37.071(2)(e)(1), in force at the time of trial, provides:

> The court shall instruct the jury that if the jury returns an affirmative finding to each issue submitted under Subsection (b) of

---

Petitioner alleges that his incarceration is the result of a violation of Texas procedural statutes, yet the instruction given was not unconstitutional, his claim is not cognizable under federal habeas review.

[29] See Boyde, 494 U.S. at 377; Franklin, 487 U.S. at 179; Zant, 462 U.S. at 890; Blystone v. Pennsylvania, 494 U.S. 299, 307 (1990).

this article [finding defendant to be a continuing threat to society and that defendant actually caused the death, intended to kill, or anticipated that a human life would be taken], it shall answer the following issue: Whether taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.[30]

The state habeas court, citing precedent from the Texas Court of Criminal Appeals, held that the absence of a burden of proof on this issue did not render the statute unconstitutional.[31] The district court also found no violation of federal law, citing to this Court's precedent.[32] In Rowell v. Dretke, this Court explained: "No Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."[33] The district court in Rowell "explained that no burden of proof exists for either the defendant or the State to prove or disprove mitigating evidence at the punishment phase."[34] Thus, we held that "reasonable jurists would not be able to debate whether this issue should have been resolved in a different manner by

---

[30] TEX. CODE CRIM. PROC. Art. 37.071 § (2)(e)(1) (Vernon 2001). Though inapplicable in this case, this article was amended in 2005 to reflect a sentence of "life imprisonment without parole" as the alternative sentence to death.

[31] See Allen v. State, 108 S.W.3d 281, 285 (Tex. Crim App. 2003); Rayford v. State, 125 S.W.3d 521, 529–30 (Tex. Crim. App. 2004).

[32] See Rowell v. Dretke, 398 F.3d 370, 378 (5th Cir. 2003) (holding that there is no constitutional requirement that Texas's mitigation issue be assigned a burden of proof); Grandos v. Quarterman, 455 F.3d 529, 536–37 (5th Cir.), cert. denied, 127 S.Ct. 732 (2006) (holding that a petitioner's Sixth Amendment rights are not violated when state law does not require the prosecution to prove the absence of mitigating factors beyond a reasonable doubt).

[33] Rowell, 398 F.3d at 378.

[34] Id.

the district court."[35]  Therefore, jurists of reason would not disagree with the district court's conclusion that a burden of proof is not constitutionally required on the mitigation issue.

D.

Petitioner also argues that Texas's method of lethal injection, which incorporates the use of sodium thiopental, pancuronium bromide, and potassium chloride, violates the Eighth Amendment's protections against cruel and unusual punishment.  The state habeas court and the federal district court both found that this method of execution did not violate the Eighth Amendment.  This issue has now been definitively resolved by the United States Supreme Court in Baze v. Rees.[36]  In that case, the Supreme Court held that Kentucky's use of the same three-drug protocol in lethal injections does not offend the Eighth Amendment.[37]  Thus, the district court's conclusion is not one debatable by jurists of reason, in light of Baze.

IV.

For the foregoing reasons, Petitioner's application for COA is denied.

DENIED.

---

[35] Id.

[36] 128 S.Ct. 1520 (2008).

[37] Id. at 1533–37.