# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 19, 2011

No. 07-70004

Lyle W. Cayce
Clerk

ANTHONY CARDELL HAYNES,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
(4:05-CV-3424)

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

This case was remanded to us by the Supreme Court, which reversed

our decision granting habeas relief to the petitioner, Anthony Cardell Haynes.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 07-70004

For the reasons hereinafter assigned, we now affirm the district court's denial of habeas relief.

## BACKGROUND

On September 19, 1999, Haynes was convicted by a jury in Texas of the capital murder of a peace officer "acting in the lawful discharge of an official duty." Tex. Penal Code § 19.03(a)(1). He was then sentenced to death. The Texas Court of Criminal Appeals (TCCA) affirmed his conviction and sentence in an unpublished opinion. *Haynes v. State* (*Haynes I*), No. 73,685 (Tex. Crim. App. Oct. 10, 2001) (unpublished). The Supreme Court then denied his petition for a writ for certiorari. *Haynes v. Texas*, 535 U.S. 999 (2002). The Texas courts denied Haynes' petition for state habeas relief, and he subsequently filed a federal habeas petition in district court. The district court denied the petition, and Haynes appealed to this court. We granted a certificate of appealability regarding Haynes' claims, pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), that "the prosecution violated his rights under the Sixth and Fourteenth Amendments through the racially discriminatory use of its peremptory challenge[s] as to" two potential jurors, L.V. McQueen and B. Owens. *Haynes v. Quarterman* (*Haynes II*), 526 F.3d 189, 202-03 (5th Cir. 2008). In our opinion granting Haynes habeas relief, we cited the following facts:

> Two different state trial judges took turns presiding over the jury selection process in this case at the state court level. Judge Wallace presided at the beginning of the jury selection process when the jurors were addressed and questioned as a group; Judge Harper presided during the next stage in which the attorneys questioned the prospective jurors individually; and Judge Wallace presided again during the final stage in which peremptory challenges were exercised and when *Batson* challenges were made, considered, and ruled upon.

2

No. 07-70004

*Haynes v. Quarterman* (*Haynes III*), 561 F.3d 535, 537 (5th Cir. 2009). We reasoned that the state court decision did not warrant deference pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), because Judge Wallace did not personally observe the voir dire and his position for evaluating the prosecutor's demeanor-based reasons for striking the potential jurors was no better than that of a reviewing court. *Id.* at 541. We granted habeas relief to Haynes on the basis of his claim as to potential juror Owens, reasoning that "no court, including ours, can now engage in a proper adjudication of the defendant's demeanor-based *Batson* challenge as to prospective juror Owens because we will be relying solely on a paper record and would thereby contravene *Batson* and its clearly-established 'factual inquiry' requirement." *Id.* (citing *Batson*, 476 U.S. at 95, and *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)).[1]

The Supreme Court granted the State's petition for certiorari and reversed, "hold[ing] that no decision of this Court clearly establishes the categorical rule on which the Court of Appeals appears to have relied." *Thaler v. Haynes* (*Haynes IV*), 130 S. Ct. 1171, 1175 (2010). The Court described that apparent "categorical rule" as follows: "that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror's demeanor." *Id.* at 1174. Although "where the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during the *voir dire*," the Court held that this did not mandate "that a [prosecutor's] demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor." *Id.* The

---

[1] Because we granted habeas relief on Haynes' claim as to prospective juror Owens, we did not address his claim as to prospective juror McQueen. *Id.* at 541 n.2.

No. 07-70004

Court also noted that "*Snyder* quoted the observation in *Hernandez v. New York*, 500 U.S. 352, 365 (1991) (plurality opinion), that the best evidence of the intent of the attorney exercising a [peremptory] strike is often that attorney's demeanor" while explaining the reason for the strike. *Id.* at 1175 (citing *Snyder*, 552 U.S. at 477). Lastly, the Court remanded for us to consider "whether the Texas Court of Criminal Appeals' determination may be overcome under the federal habeas statute's standard for reviewing a state court's resolution of questions of fact." *Id.*

## STANDARD OF REVIEW

"In a habeas appeal, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standard of review that the district court applied to the state court decision." *Jones v. Cain*, 600 F.3d 527, 535 (5th Cir. 2010). In applying AEDPA, we look to the last reasoned state-court decision on the merits of Haynes' *Batson* claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) ("[W]e begin by asking which is the last *explained* state-court judgment on the . . . claim." (emphasis in original)). Here, the TCCA decision on direct appeal is the last explained state-court decision on Haynes' *Batson* claims.

AEDPA lays out the applicable standards of review for this case. "Under AEDPA, if a state court has adjudicated a habeas petitioner's claims on the merits, he may receive relief in the federal courts . . . where the state court decision 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' . . . ." *Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)). "A state court's decision is 'contrary to' clearly established federal law under § 2254(d)(1) if 'the state court applies a rule that contradicts the governing law announced in Supreme Court cases, or . . . the state court decides a case differently than

No. 07-70004

the Supreme Court did on a set of materially indistinguishable facts.'" *Woods v. Quarterman,* 493 F.3d 580, 584 (5th Cir. 2007) (alteration in original) (quoting *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc)). "Before this court may grant habeas relief under the unreasonable application clause, the state court's application of clearly established federal law must be more than merely incorrect or erroneous, it must be objectively unreasonable." *Young v. Dretke*, 356 F.3d 616, 623 (5th Cir. 2004).

"Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wood v. Allen*, 130 S. Ct. 841, 845 (2010) (quoting 28 U.S.C. § 2254(d)(2)). This standard, like the others, is deferential to the state courts: "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* at 849.[2]

## DISCUSSION

As we explained in *Haynes III*, a *Batson* challenge involves three steps:

> The Supreme Court has outlined a three-step process for determining whether peremptory strikes have been applied in a discriminatory manner. First, the claimant must make a *prima facie* showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been

---

[2] AEDPA also states that "'a determination of a factual issue made by a State court shall be presumed to be correct,' and the petitioner 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Wood*, 130 S. Ct. at 845 (quoting 28 U.S.C. § 2254(e)(1)). The Supreme Court "ha[s] explicitly left open the question of whether §2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)." *Id.* at 849. However, as in *Wood*, we need not determine whether § 2254(e)(1) should apply, because the TCCA's determination, that the prosecutor's decisions to strike potential jurors Owens and McQueen were not purposefully discriminatory, was not an unreasonable determination in light of the evidence presented in the proceedings.

No. 07-70004

> made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination.

561 F.3d at 539 (quoting *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993)). "The 'shifting burden' described in the *Batson* framework is one of production only. The ultimate burden of persuasion always lies with the party making the claim of purposeful discrimination." *Bentley-Smith*, 2 F.3d at 1373. The trial court, at the third stage, must "decid[e] whether it was more likely than not that the [peremptory] challenge was improperly motivated." *Johnson v. California*, 545 U.S. 162, 170 (2005).

> The TCCA outlined the following facts about the voir dire in this case:

> The record establishes that Haynes is African-American and that, of the fifty people in the venire, seven were African-American and six appeared for voir dire. The State peremptorily struck four of the six and accepted one venirewoman, whom the defense peremptorily struck; one African-American man was seated on the jury.

*Haynes I*, No. 73,685 at 14. Owens and McQueen were two of the four African-American potential jurors who were peremptorily struck by the prosecutor.

The state does not contest that Haynes made a prima facie showing that the prosecutor exercised peremptory strikes against Owens and McQueen on the basis of race. Thus, our analysis focuses on the second and third steps of *Batson*.

At the second step of the *Batson* hearing, the prosecutor offered the following explanation for striking potential juror Owens:

> During the interview, this lady's demeanor was one, I guess, best I can describe it, somewhat humorous. She never did really take on a serious attitude during the interview. She would say one thing but her body language would indicate that this is not her

No. 07-70004

true feeling.  And I'm sure that [the defense attorney] reasonably expected us to strike this lady after she was interviewed because I think [the defense attorney] voir dired her and he only talked to her for a very short time because he was very pleased with the things she said, more as she was leaning toward them.  If the defendant was found guilty, she would certainly be leaning toward a life sentence.  And with that, I drew a conclusion in my mind, based on my observation, that she already had a predisposition and would not look at it in a neutral fashion.

Similarly, with regard to prospective juror McQueen, the prosecutor stated:

And where Ms. [sic[3]] McQueen, again, when questioned, Ms. [sic] McQueen would give me all the indications that in response to my questions by the language of demeanor that he was very weak on the death punishment and did not — and stated that there were some cases that I could not give a death sentence even if the law permitted such and again I struck him as well.

The TCCA did not err in determining that the prosecutor satisfied the second step of *Batson* by offering a race-neutral reason for striking each of the two potential jurors.  "The second step of [*Batson*] does not demand an explanation that is persuasive, or even plausible.  'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"  *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (second alteration in original) (quoting *Hernandez*, 500 U.S. at 360).

We also conclude that the TCCA's determination that Haynes did not carry his burden of showing purposeful discrimination at the third *Batson* step is neither contrary to, nor an unreasonable application of, clearly established law; nor is the TCCA's decision based on an unreasonable determination of the facts, in light of the evidence.  Haynes raises several arguments, which we address in turn.

---

[3] McQueen is male.

No. 07-70004

First, Haynes argues that the prosecutor's demeanor-based reasons quoted above should not have been accepted because Judge Wallace and the TCCA were unable to observe the demeanor of either potential juror. But this argument was rejected by the Supreme Court in *Haynes IV*.

Haynes also submits that Judge Wallace must have "fail[ed] . . . to conduct an adequate inquiry at *Batson's* third step," Pet'r 's Supplemental Br. 52, because all he said in rejecting the *Batson* challenges to the peremptory strikes of both Owen and McQueen was, "It's race neutral." However, there was no clearly established Supreme Court case law that required Judge Wallace to say more than he did. Although the Supreme Court stated in *Batson* that "a [trial] court must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available,'" 476 U.S. at 93 (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)), the Court has not gone further and stated that a trial court must also make detailed on-the record findings about that inquiry. Therefore, the fact that Judge Wallace said very little in denying Haynes' *Batson* challenges does not render the TCCA's decision, in affirming Judge Wallace's denials, "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Finally, Haynes claims that there are several factors supporting the inference that the prosecutor's proffered reasons were actually a pretext for discrimination, and thus that the TCCA's determination was an unreasonable application of clearly established law. While some of these arguments give some support to an inference of purposeful racial discrimination, they are not enough, individually or together, to convince us that the TCCA's rejection of Haynes' Batson claim was objectively unreasonable.

No. 07-70004

Haynes first compares this case to *Miller-El v. Dretke*, 545 U.S. 231 (2005), arguing that, as in *Miller-El*, (1) there was a practice of excluding minorities from juries in the county where Haynes was tried, and (2) there was a pattern of strikes against African-American potential jurors in his case. In *Miller-El*, the Supreme Court cited multiple factors that led it to grant habeas relief based on the petitioner's *Batson* claim. These factors included evidence that "for decades leading up to the time this case was tried prosecutors in the Dallas County office had followed a specific policy of systematically excluding blacks from juries." *Id.* at 263. There was testimony from witnesses in *Miller-El* about the existence of a policy adopted by the district attorney's office to exclude African-Americans from juries. *Id.* at 264. The Court also emphasized the importance of "evidence that the [Dallas County] District Attorney's Office had adopted a formal policy to exclude minorities from jury service. . . . [namely] [a] manual entitled 'Jury Selection in a Criminal Case' . . . . [which] contained an article authored by a former prosecutor . . . under the direction of his superiors in the District Attorney's Office, outlining the reasoning for excluding minorities from jury service." *Id.* (second alteration in original) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 334-35 (2003)) (quotation marks omitted). Another factor cited by the Court was that out of twenty African-American potential jurors, the prosecution used peremptory strikes on ten of them, and excused nine others for cause or by agreement. *Id.* at 240-41.

The circumstantial indications of intentional racial discrimination in this case, although not as compelling as in *Miller-El*, have some persuasive value. Haynes cites to cases in which *Batson* violations occurred in Harris County, where he was tried,[4] as well as cases from the 1980s and early 1990s

---

[4] *Emerson v. State*, 851 S.W.2d 269 (Tex. Crim. App. 1993); *Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1990); *Thomas v. State*, 209 S.W.3d 268 (Tex. App. 2006); *Vargas*

in which courts and judges observed that African-Americans were rarely part of juries for criminal[5] or capital[6] cases in Harris County. Haynes, however, was tried and convicted in 1999. He also notes that the prosecution in this case used peremptory strikes against four of six African-American potential jurors. Relatedly, he argues that the prosecutor had a motive to exclude African-Americans from the jury, because Haynes was an African-American defendant accused of shooting and killing a white police officer. Nevertheless, these circumstantial indications are insufficient to show that the TCCA's determination — that the decision of the prosecutor in this case to peremptorily strike potential jurors Owens and McQueen was not based on purposeful racial discrimination — was objectively unreasonable.

In addition, Haynes argues that potential jurors Owens and McQueen gave answers that were similar to, or more favorable to the prosecution than the answers given by some non-African-American potential jurors who were not struck. Haynes reasons that in this respect, the record undermines the credibility of the prosecutor's stated reasons for striking Owens and McQueen. But the prosecutor's reasons involved Owens and McQueen's nonverbal demeanor and body language, not just their words, and the written

---

*v. State*, 859 S.W.2d 534 (Tex. App. 1993).

[5] *Harris v. Texas*, 467 U.S. 1261, 1263 (1984) (Marshall, J., dissenting from denial of certiorari) (citing the testimony of various witnesses to support the proposition that "prosecutors in Harris County routinely employ peremptory challenges to exclude Negro jurors in cases involving the credibility of a white complainant and a Negro defendant," including the testimony of "a Texas District Judge with 28 years of experience in the county's criminal justice system . . . . [who] stated [that] he could not recall a single instance in which a Negro juror sat on a petit jury in a criminal case in which the complainant was white and the defendant Negro"); *Williams v. State*, 804 S.W.2d 95, 107 (Tex. Crim. App. 1991) ("[S]everal local defense attorneys . . . related that they were unaware of blacks being on any jury which they tried in Harris County, but could not speak as to all trials.").

[6] *Tompkins v. State*, 774 S.W.2d 195, 203 (Tex. Crim. App. 1987) ("[B]lack jurors have been relatively uncommon on capital murder juries in Harris County during the past several years . . . .").

record does not allow us to compare Owens and McQueen to the other potential jurors in those respects. Consequently, we cannot fully re-evaluate the credibility of the prosecutor's claim that the potential jurors he peremptorily struck seemed particularly favorable to the defense.[7] Thus, Haynes has not shown that the TCCA's determination was objectively unreasonable.

Lastly, Haynes asks us to consider, as evidence of judicial bias, the fact that Judge Harper was cleaning pistols on his bench during the questioning of individual potential jurors. While such behavior is not commendable, it was Judge Wallace, not Judge Harper, who adjudicated the *Batson* challenges at issue.

In sum, on the record in this case, none of the factors cited by Haynes are sufficient to persuade us that the TCCA's determination that Haynes failed to carry his burden at the third stage of the *Batson* inquiry, was an objectively unreasonable application of clearly established law, or an unreasonable determination of the facts.

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief to Haynes.

---

[7] The impossibility of making such an evaluation on the basis of a paper record was essentially our reason for granting habeas relief in *Haynes III*, but the Supreme Court reversed us.