# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 20, 2007

Charles R. Fulbruge III
Clerk

No. 07-70008

SHOZDIJIJI SHISINDAY,
aka Danny Dean Thomas.

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent-Appellee

Appeal from the United States District Court for the
Southern District of Texas, Houston Division

Before JONES, Chief Judge, and JOLLY and DAVIS, Circuit Judges.

PER CURIAM:

Petitioner Shozdijiji ShisInday was convicted of capital murder in Texas and sentenced to death. He now seeks a certificate of appealability ("COA") from the district court's denial of habeas corpus relief on nine issues. Because ShisInday has failed to make a substantial showing of a denial of a constitutional right or otherwise meet the qualifications for his application, we deny his application for COA.

I.

A jury first convicted ShisInday of capital murder on March 17, 1982. The Court of Criminal Appeals provided the following detailed description of the murder largely taken from ShisInday's confession:

> The evidence at the guilt/innocence phase of trial revealed that in July of 1981, ShisInday and his girlfriend, Phoebe, were staying at the home of James Peels, his two sons, fifteen-year old Doyle Peels and seventeen-year-old Zendal Peels, and Martha Ann Tarver. On July 17, ShisInday gave Doyle a ride in his 1969 black-and-white Cadillac to pick up Doyle's work schedule at K-Mart. ShisInday entered the store with Doyle and purchased some ammunition in the sporting goods department. Later that evening, ShisInday, accompanied by Zendal, drove Doyle and Ronald McHenry to the skating rink.
>
> . . .
>
> According to ShisInday's July 9th transcribed statement and testimony from other witnesses, ShisInday and Zendal went shopping at a Safeway store after dropping the boys off at the rink. As they were leaving the store, they spotted nineteen-year-old Sylvia Harrison who was having car trouble. They stopped to help her, and ShisInday determined that she needed a new fan belt. They drove her across the street to an auto parts store, purchased the belt, and put it on her car. Harrison asked ShisInday and Zendal to follow her down the street to her house to make sure her car did not overheat again. Once they arrived, ShisInday fixed a leak in her car's "heater hose." She offered them a beer and invited them into the house. They sat in her living room, drank beer, and smoked some marijuana.
>
> According to ShisInday's statement to the police, Zendal unexpectedly hit Harrison in the side of the head with ShisInday's gun, which Zendal had concealed in a paper bag. They carried Harrison, unconscious, out to the car and shoved her down on the passenger-side floorboard. They also took several items from her house including her telephone and eye glasses. ShisInday drove away with Zendal sitting in the passenger seat. Harrison regained consciousness, kicked the steering wheel, and bit ShisInday's hand. ShisInday told Zendal to grab her, and Zendal hit her in the head again with the gun, knocking her out. She regained consciousness again, and Zendal repeatedly hit her in the head with his knife until

2

she passed out. She came to once more and began repeating, "God help me." ShisInday got his gun, put it to the side of her head, and shot her one time. They drove her to a bridge near the river and picked up some cinder blocks. They then drove to a more secluded bridge and parked under one of the support pillars. ShisInday looked around to see if anyone was nearby. Zendal removed Harrison's clothes and cut off her bra. After tying cinder blocks to Harrison's feet and neck with a rope, they dumped her in the San Jacinto River. ShisInday broke off a willow branch and brushed away their footprints as they returned to the car. They drove to a grocery store parking lot where they threw Harrison's clothes and other personal items in a dumpster. Then they went to a car wash and washed the outside and inside of the car, particularly the floorboard, which was covered in blood.

Opinion on Direct Appeal, at 2-4.

The District Court's opinion provides additional information about the crime and the procedural history of this case.

After disposing of Ms. Harrison's body, Zendal and ShisInday returned to the Peels' home between four and five a.m. Zendal Peels' father accused ShisInday and Zendal of being late because they were smoking pot. ShisInday explained that they had car trouble. ShisInday then went to sleep in a back bedroom with his girlfriend.

The Peels family soon discovered blood on the outside and inside of ShisInday's vehicle. ShisInday's girlfriend woke him up in the morning and confronted him about the blood. ShisInday claimed that he ran over a dog, put it in his car, and mercifully killed the dog to end its suffering. ShisInday told the same story to the Peels family. When the Peels and ShisInday's girlfriend did not believe his story, ShisInday decided to leave. Before going, ShisInday threatened Zendal "[i]f I go down, you are going down with me because you are in this with me." Tr. Vol. 15 at 44.

ShisInday, who had a long history of mental problems, soon sought treatment at a psychiatric hospital claiming that others accused him of killing a person when he actually killed a dog. After talking to Zendal Peels, and going to Ms. Harrison's residence and finding that there had been a fire, the police arrested ShisInday at around 1:00 a.m. at the hospital. ShisInday initially repeated his dog story to the

police, but he later confessed to killing Ms. Harrison. In 1982, a jury convicted ShisInday of capital murder and he received a death sentence. The state courts affirmed his conviction and sentence on state appellate and habeas review.

ShisInday sought federal habeas relief. On July 2, 1997, United States District Judge Norman Black issued a habeas writ because Texas involuntarily medicated ShisInday with antipsychotic drugs during trial without making a proper inquiry into his mental state. Texas filed a late notice of appeal. ShisInday filed a cross-appeal and moved to dismiss the State's untimely appeal. On October 16, 1997, the Fifth Circuit dismissed the appeal when Texas conceded that the notice of appeal was not timely and that the circuit court lacked jurisdiction. On October 24, 1997, an assistant attorney general and ShisInday entered into a "stipulation of dismissal" agreeing that: (1) ShisInday would be released immediately; (2) Texas would not seek further review of the final judgment; and (3) ShisInday would not prosecute his cross appeal. The Fifth Circuit dismissed the cross appeal on November 4, 1997.

. . .

The guilt/innocence phase of ShisInday's second trial began on November 9, 1998. Unlike in his first trial, the jury charge allowed for ShisInday's conviction either as a party or as the principal actor in Ms. Harrison's murder. A jury again found ShisInday guilty of capital murder. After a separate punishment phase, the jury retired to consider Texas' special issue questions.[1] After sending out four

---

[1] The special issues submitted pursuant to article 37.071 of the Texas Code of Criminal Procedure provided as follows:

Special Issue No. 1

Was the conduct of the defendant, Shozdijiji ShisInday also known as Danny Dean Thomas, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

Special Issue No. 2

Is there a probability that the defendant, Shozdijiji ShisInday also known as Danny Dean Thomas, would commit criminal acts of violence that would constitute a continuing threat to society?

Special Issue No. 3

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is

notes suggesting that they were experiencing problems in reaching a verdict, the jury finally answered Texas' special issue questions in a manner requiring the imposition of a death sentence. ShisInday unsuccessfully sought state appellate and habeas relief from his conviction and sentence.

ShisInday v. Quarterman, 2007 U.S. Dist. LEXIS 17099, *6-8 (S.D. Tex. Mar. 9, 2007).

ShisInday filed a federal petition for a writ of habeas corpus raising numerous issues. Respondent Nathaniel Quarterman filed a motion for summary judgment. The district court granted Quarterman's summary judgment motion, denied ShisInday's petition and dismissed the case. The district court declined to certify any issues for appellate review.

ShisInday now seeks a certificate of appealability from this court raising nine issues.

## II.

ShisInday filed the instant Section 2254 application for habeas relief after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His application is therefore subject to the AEDPA. Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, a petitioner must obtain a COA before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). "This is a jurisdictional prerequisite because the COA

_____

a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

You are instructed that in answering this "Special Issue" that you shall answer the Issue "Yes" or "No."
You may not answer this Issue "No" unless you agree unanimously, and you may not answer this Issue "Yes" unless ten (10) or more of you agree to do so.
You shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.

statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'" Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (citing 28 U.S.C. §2253(c)(1)). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." Id. (citing Slack v. McDaniel, 529 U.S. 473, 482 (2000); Hohn v. United States, 524 U.S. 236, 248 (1998)). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted). Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997).

The analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El, 123 S.Ct. at 1039. The court must look to the district court's application of AEDPA to the petitioner's constitutional claims and determine whether the court's resolution was debatable among reasonable jurists. Id. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. Rather, "'[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Id. at 1040. (citing Slack v. McDaniel 529 U.S. 473, 484). "[W]hen the denial of relief is based on procedural grounds (Slack two-prong test): the petitioner must show not only that 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right',

but also that they 'would find it debatable whether the district court was correct in its procedural ruling'." Beazley v. Johnson, 242 F.3d 248, 263 (5th Cir. 2001).

III.

Exempt from Execution due to Long History of Mental Illness

ShisInday argues first that a certificate of appealability should issue on the question whether executing him violates Supreme Court precedent because of his long history of mental illness. Because ShisInday did not raise this claim in state court, the district court found the claim to be procedurally barred. The district court also rejected the claim on the merits. The district court concluded that there is no precedent for excluding from execution a petitioner who has a history of mental illness and mental disorders, citing In re Neville, 440 F.3d 220, 221 (5th Cir. 2006)(finding that Atkins did not exempt mentally ill inmates from execution).

The nature of ShisInday's argument is not entirely clear. On the one hand he argues that the Supreme Court's exemptions from execution of the mentally retarded in Atkins v. Virginia, 536 U.S. 304 (2002), and of juveniles in Roper v. Simmons, 543 U.S. 551 (2005), are milestones along a path that leads to an exemption from execution for inmates who are mentally ill. However, he also relies heavily on Panetti v. Quarterman, 127 S. Ct 2842 (2007), both to overcome the procedural bar and as a basis for granting a COA on this issue. Panetti raised a claim under Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed. 2d 335 (1986), that he was incompetent to be executed due to insanity. In Panetti, the Supreme Court held that the petitioner's claim was not procedurally barred under 28 U.S.C. § 2254 despite his failure to raise it in previous habeas applications because the claim was not ripe at that time. It also held that the state court failed to provide adequate procedures in response to his claim that he was incompetent to be executed. Finally, addressing the merits of the petitioner's incompetency claim, the Supreme Court rejected the Fifth Circuit's

7

test for incompetency that treated "delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted."

To the extent ShisInday seeks an extension of <u>Atkins</u> and <u>Roper</u> to the mentally ill, that claim is procedurally barred for failure to present the issue to the state court. In addition, this circuit's precedent precludes that argument, unless the petitioner contends he is insane and therefore incompetent to be executed. <u>In re Neville</u> distinguished an inmate who is mentally ill from an inmate who is insane. "Twenty years ago, <u>Ford v. Wainwright</u> established that the Eighth Amendment prohibits the execution of the insane. 477 U.S. 399, 410, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986). Neville, however, does not assert that he is insane." 440 F.3d at 221 n.1. Similarly, ShisInday does not claim that he is insane.

To the extent ShisInday argues that he is insane and therefore incompetent to be executed, that claim is not yet ripe, nor has it been exhausted. The setting of an execution date, which causes a <u>Ford</u>-based incompetency claim to become ripe, has not occurred in this case. <u>Panetti</u>, 127 S.Ct. at 2852; <u>Stewart v. Martinez-Villareal</u>, 523 U.S. 637, 643 (U.S. 1998). In addition, ShisInday has not presented this claim to the state court.

ShisInday has not demonstrated that he is entitled to COA on this claim.

## IV.

Coerced Confession

ShisInday argues that a certificate of appealability should issue on the question whether the state court erred in determining that his confession was not the result of police coercion. The state court found that ShisInday voluntarily and knowingly confessed without threats or coercion. The district court found that ShisInday had not met his AEDPA burden to rebut the

presumptive correctiveness of the finding that the police did not coerce his confession.

ShisInday's principal argument in support of his application for COA on this issue is that the district court applied the wrong legal standard to reject his claim. He argues that the district court treated the issue as an issue of fact, rather than as a legal question meriting independent consideration, citing Miller v. Fenton, 474 U.S. 104 (1985). ShisInday is correct that the voluntariness of a confession is matter for independent federal determination and is ultimately a legal determination. Id. at 112. However, "subsidiary factual questions . . are entitled to the § 2254(d) presumption." Id. In Miller, the Supreme Court held that

> [S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable. But once such underlying factual issues have been resolved, and the moment comes for determining whether, under the totality of the circumstances, the confession was obtained in a manner consistent with the Constitution, the state-court judge is not in an appreciably better position than the federal habeas court to make that determination.

Id. at 117. Contrary to ShisInday's assertion, the district court properly applied this standard.

The district court quotes the trial court as finding that

(1) the police did not coercively abuse, threaten, or promise ShisInday anything in return for his confession; (2) ShisInday was lucid and could understand the nature of his confession; (3) ShisInday did not experience any delusion, hallucination, or effects of mental illness while confessing; (4) the police did not deprive ShisInday of food or sleep; and (5) ShisInday did not invoke his right

to silence or request an attorney's assistance. Opinion on Direct Appeal, at 17.

These are all subsidiary factual questions under <u>Miller</u> that are subject to § 2254 deference. <u>Miller</u>,474 U.S. at 112. ShisInday raised this argument at trial, on direct appeal and on state habeas review. The trial court held a suppression hearing and concluded that ShisInday's confession was properly obtained, a conclusion that has not been disturbed by several reviewing courts. The state court's factual findings are fairly supported by the record and ShisInday has not rebutted this presumptively correct finding by clear and convincing evidence as is required by 18 U.S.C. § 2254(e)(1). Reasonable jurists could not debate that the district court properly rejected this claim in full accord with constitutional standards, including the correct standard of review. COA is denied on this claim.

## V.

## Jury Instruction to Continue Deliberating

ShisInday argues next that COA should issue on the question whether the state court violated his constitutional right to due process by instructing the jury to continue deliberating after receiving repeated notes from the jury indicating they could not reach agreement without informing the jury of the effect of a hung jury. Petitioner has two complaints: the trial court's failure to instruct the jury that if they could not reach a verdict on the death penalty that a life sentence would be imposed and the trial court's instruction to the jury to continue to deliberate in response to notes from the jury that they were deadlocked.

Courts are given wide discretion in determining whether to declare a mistrial. In a habeas context, the petitioner must establish that under the totality of the circumstances, the charge was so coercive as to have constitutionally rendered the petitioner's trial fundamentally unfair. <u>Montoya v. Scott</u>, 65 F.3d 405, 409 (5th Cir. 1995). Based on our review of the record in

this case, the instructions from the trial court were not coercive - they simply told the jury to continue to deliberate. Despite statements indicating that there was "little hope" of a unanimous verdict, later notes indicated that progress was being made. In addition, the jury continued to request evidence indicating that they were still deliberating. COA is not appropriate on this point. See United States v. Lindell, 881 F.2d 1313, 1321 (5th Cir. 1989).

ShisInday argues that the above circumstances coupled with the erroneous instruction to the jury that 10 votes were required for a life sentence make the instructions to continue to deliberate impermissibly coercive. In Jones v. United States, 527 U.S. 373 (1999), the Supreme Court held that an accused facing the death penalty is not entitled to an instruction as to the effect of a sentencing deadlock. ShisInday is not entitled to COA on this issue.

## VI.

Admission of Testimony from First Trial

After his first trial, ShisInday was granted a retrial because the trial court had ordered him medicated without making factual findings necessary to justify his medication as required by Riggins. Riggins v. Nevada, 504 U.S. 127 (1992). In ShisInday's second trial, the trial court allowed the admission of testimony from the first trial. The witness, Gilliam, was deceased at the time of the second trial. Gilliam's testimony was brief. He testified that he knew ShisInday and that he recognized State's Exhibit 10 as the .25 automatic pistol he owned and later sold to ShisInday for fifty dollars in July 1981. Gilliam testified on cross-examination that the gun had one clip when he sold it to ShisInday. ShisInday argues that admitting this testimony in his second trial violates Riggins and the confrontation clause because he has no means to refute it. He was medicated during the first trial when the witness testified. The witness was unavailable for cross-examination during his second trial.

The state court held that the testimony was cumulative and thus not a violation of ShisInday's confrontation rights. The federal district court ruled that even if the admission of the testimony violated the confrontation clause, the error did not have a substantial and injurious effect or influence in determining the jury's verdict.

ShisInday argues that when a petitioner establishes a Riggins violation, he need not prove prejudice or harm to obtain relief. We disagree. Under Brecht v. Abrahamson, federal habeas relief may not be granted for trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also, Hogue v. Johnson, 131 F.3d 466, 499 (5th Cir. 1997). Based on our review of the record, we agree with the Court of Criminal Appeals that the evidence was cumulative of other properly admitted evidence and thus its admission did not have a substantial and injurious effect on the verdict. As stated by the Court of Criminal Appeals,

> There was other evidence that linked ShisInday to the gun - the gun was found covered in blood in ShisInday's car, other witnesses testified that the gun used in the murder belonged to ShisInday, and ShisInday confessed to shooting the victim with that gun. We need not determine whether admission of Gilliam's testimony violated ShisInday's Sixth Amendment right to confront his witnesses because the testimony was cumulative and did not contribute to ShisInday's conviction.

Opinion on Direct Appeal, at 32. We agree and conclude that ShisInday is not entitled to a COA on this issue.

VII.

Estoppel

ShisInday argues that the district court erred in rejecting his estoppel claim in which he alleges that the prosecution should have been barred from

12

relying on a party theory in the second trial that the prosecution abandoned in his first trial. The state's theory in ShisInday's first trial was that he was the shooter. In the second trial, the state proceeded under the theory that if ShisInday was not the shooter, then he was at least a party to the crime. ShisInday argues that the prosecution abandoned the "party" theory in the first trial because the state dismissed the case against his co-defendant for insufficient evidence. He argues that the state should be estopped from relying on the party theory in the second trial. The Fifth Circuit has rejected judicial estoppel as a ground for habeas relief. Nichols v. Scott, 69 F.3d 1255, 1272 (5th Cir. 1995). ShisInday is not entitled to COA on this issue.

## VIII.

### Fourth Amendment Claims

In his sixth ground for COA, ShisInday argues that COA should issue on whether his Fourth Amendment claims were properly dismissed. ShisInday argued at trial that his arrest was unlawful. After the jury was sworn and jeopardy had attached, the trial court held a hearing on the issue and overruled the challenge. The district court dismissed the claim under Stone v. Powell, 428 U.S. 465 (1976). Stone bars habeas review of Fourth Amendment claims when the state has provided an opportunity for full and fair litigation of the claim. ShisInday argues that full and fair consideration of the merits of his Fourth Amendment claim was thwarted because of the timing of the hearing. He argues that because the hearing was held after the jury was selected and jeopardy had attached, the trial court was put in the position of almost being required to overrule the motion. ShisInday's argument about the timing of the hearing does not alter the correctness of the district court's decision. He has not identified any law that requires a trial court to consider the admissibility of evidence before the jury is seated and sworn. The Fifth Circuit applies the bar as long as the state gives the defendant an opportunity to litigate the issue, whether or not

the defendant takes advantage of the opportunity. <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320-21 (5th Cir. 2002). ShisInday was given an opportunity to have his Fourth Amendment claims litigated. Therefore the <u>Stone</u> bar applies. He is not entitled to COA on this issue.

## IX.

Compulsory Process Claim

ShisInday argues that a certificate of appealability should issue on whether it was a violation of his right to due process and compulsory process to allow the state to threaten his co-defendant, Zendal Peels, with prosecution if he were to testify and to allow Peels to assert his Fifth Amendment right after the state dismissed the case against him over 17 years ago. ShisInday wanted to call his co-defendant to testify and wanted him to assert his Fifth Amendment rights in front of the jury. The case against the co-defendant had been dismissed by the state for insufficient evidence after Peels' statement was ruled inadmissible against him. ShisInday claims that the prosecutor intimidated Peels into invoking his Fifth Amendment rights to interfere with ShisInday's right to compulsory process, in violation of <u>Brown v. Cain</u>, 104 F.3d 744, 749 (5th Cir. 1997). However, because there is no statute of limitations on murder, the case against Peels could be reopened at any time. Peels had a reasonable fear of danger of prosecution and there is no <u>Brown</u> violation on these facts. ShisInday is not entitled to COA on this issue.

## X.

Improper Argument

ShisInday's next argument is that the prosecutor engaged in improper argument when he argued in closing that ShisInday had raped the victim before her murder. During the trial, testimony had been admitted regarding the presence of semen in the victim's body, and other circumstances related to the condition of the victim's body giving the impression a rape had occurred. This

evidence came in without objection. ShisInday objected to the prosecution's remarks in closing as being outside the evidence. ShisInday had originally been charged with rape and four members of the trial jury were in the courtroom when the rape charges were read before trial began. The rape charge was later dropped. ShisInday argues that the argument deprived him of due process and allowed him to be tried for a crime not contained in the indictment.

The state trial court found that ShisInday was procedurally barred from challenging the admission of the evidence because he did not object at trial. The state habeas court agreed and also concluded that the testimony was admissible because it was relevant to establish a motive for killing the victim, burning her apartment and disposing of her body. The claim related to the prosecution's argument was also rejected on direct appeal and on state habeas review - first because the error was not preserved and alternatively because rape was a reasonable inference from the evidence and suggested a motive for the killing.

We agree with the state courts and the district court that ShisInday's claims as to the admission of the evidence are procedurally barred for failure to object at trial. We also agree with the state court that the prosecutor's argument is not a basis for relief. Although there was no direct evidence of rape before the jury, the district court properly found that rape was a reasonable inference from the evidence. COA is not appropriate on this issue.

XI.

Prolonged Stay on Death Row is Cruel and Unusual

ShisInday has been on death row for 25 years and argues that he is entitled to a COA on the issue of whether his prolonged stay on death row violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the Constitution. There is no established law supporting this claim and clear Fifth Circuit precedent against it. Felder v. Johnson, 180 F.3d 206, 215 (5th Cir. 1999)(rejecting argument that executing petitioner after

20 years on death row was unconstitutional and stating that the claim bordered on being legally frivolous.)  ShisInday is not entitled to COA on this issue.

XII.

For the foregoing reasons, ShisInday's Application for Certificate of Appealability is DENIED.