# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-70024

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2015

Lyle W. Cayce
Clerk

DEXTER JOHNSON,

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-2466

Before STEWART, Chief Judge, and JOLLY and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Dexter Darnell Johnson (Johnson), a Texas death row prisoner, appeals
the district court's denial of federal habeas relief on his Fifth Amendment
claim, arguing that his statements made during a second custodial
interrogation were admitted despite the invocation of his right to have an

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-70024

attorney present during the first custodial interrogation.  He also seeks a certificate of appealability (COA) to determine whether: 1) the district court erred by denying his motion for leave to amend his federal habeas petition with new claims; 2) the Constitution prohibits the execution of the mentally ill; 3) the district court erred in rejecting his allegation of incompetency to waive his right to counsel and to remain silent; and 4) the district court erred in rejecting his argument that changes in Texas decisional law warrant a new trial.  For the reasons stated herein, we AFFIRM the district court's denial of habeas relief on Johnson's Fifth Amendment claim, and we DENY his application for a COA.

## I.    BACKGROUND

A. Facts of the Crime

During the early morning hours of June 18, 2006, Johnson and four friends were driving around the neighborhood looking for someone to rob. Johnson's companions were: (1) Keithron Fields, whom Johnson considered a brother; (2) Timothy Randle, who was driving that night; (3) Ashley Ervin, the owner of the car; and (4) Louis Ervin, Ashley's fifteen-year-old brother.  Louis Ervin testified to the events that took place that night.

The group eventually came upon Maria Aparece and her boyfriend, Huy Ngo, talking while sitting inside Aparece's blue Toyota Matrix.  Johnson ordered Randle to turn the car around and park alongside the curb because he wanted to "jack the people that was in the car."  He asked Fields if he was ready and placed a black bandana over his mouth while Fields pulled the hood of his jacket over his head.  Brandishing a shotgun, Johnson ran up to the driver's side and threatened to bust through the window if Aparece did not open the car door. Fields was pointing a medium-sized black gun toward the passenger side.  Although she refused at first, Aparece eventually complied and opened the door.  Johnson pulled Aparece from the car by her hair and

2

forced her into the backseat of the Matrix while Fields shoved Ngo into the backseat as well. Johnson ordered Louis Ervin into the backseat with the victims while he and Fields climbed into the front. Johnson then drove the group around for close to ten minutes demanding money from Aparece and Ngo, but they did not have any. Angered, Johnson drove around for another twenty minutes or so searching for a wooded area while Aparece cried and begged for her freedom. They eventually found a park with a wooded area, and Johnson parked the Matrix in the woods. Randle and Ashley Ervin, who had been following closely in her car, parked nearby. Fields forced Ngo out of the Matrix and onto his knees while Johnson climbed into the backseat and raped Aparece at gunpoint. Fields held a gun to Ngo's head and taunted him as he was crying, saying things like "My brother in there having sex with your girlfriend. What you going to do about it?" Afterward, Johnson told the couple that "it was the end right here" and that he was going to "off them." Although they both continued to cry and Aparece begged for her life, Johnson and Fields marched the couple into the woods and shot them both once in the head.

Immediately after the murders, Johnson and Fields, driving Aparece's blue Matrix, caught up with the rest of their companions at a stoplight. Johnson and Fields were laughing and playing loud music. Before ordering them to follow him to a gas station, Johnson boasted, "Man, I had to go ahead and off them people." At the gas station—where police obtained surveillance video of the Matrix—Louis Ervin asked Johnson why he killed the couple, to which Johnson replied that Johnson had said the name "Louis" to the victims during the robbery and that "they didn't want to give him no money." Johnson also stated that "killing people is what he do." Later, Johnson took the group on a shopping spree at two separate Walmarts where police later obtained surveillance video showing Johnson, Fields, and Randle using Aparece's credit

card.  Johnson was arrested three days later for possession of marijuana and was quickly linked to the disappearance of Aparece and Ngo.

B. Johnson's Custodial Statements to the Police

1.  The First Recorded Statement

On the afternoon of June 21, 2006, upon learning that Johnson had been taken into custody that morning on drug charges, two detectives from the Fort Bend County Sheriff's Department—Detectives Everett Hargrave and Bruce Campbell—went to interview Johnson about Aparece's stolen car and her status at the time as a missing person.  After reading Johnson his Miranda warnings, which Johnson acknowledged both orally and in writing he understood, the detectives questioned him for over four hours.  At trial, the State presented the first hour and twenty-eight minutes of this recorded statement.  During this admitted portion of the statement, Johnson denied having robbed anybody, and denied all knowledge of the stolen vehicle or Aparece.  However, Johnson did eventually admit that he might have picked up Aparece's credit card and made purchases without permission after two unknown black men dropped the card on the ground.  After the first hour and twenty-eight minutes, Johnson told Detective Hargrave that he wanted to return to his cell because "it seem[ed] like [the officers were] . . . trying to pin this stuff on [him]."  Detective Hargrave disputed the contention that they were trying to charge him with credit card abuse, and Johnson continued to speak with the detectives for approximately two and a half more hours.

During that time Johnson admitted that he, Fields, Randle, and the Ervins robbed Aparece of her car, but maintained that they left her and Ngo standing on the street unharmed.  He also described several other extraneous robberies that were committed around that same time.  After several hours, Detective Hargrave expressed his intention to end the interview, but indicated that he still did not believe Johnson had told him everything.  He explained

4

that the police could not make any deals for Johnson, but if Johnson desired any leniency from the District Attorney's Office, he needed to come forward with "complete disclosure." The following exchange then occurred:

Johnson: [interrupting] I'm trying, I'm trying, I'm trying to be right, I'm trying to be right here to tell you all I know. That's all I know right now. *I don't even want to talk no more until I get me a lawyer or something.* Because I, I, I keep on telling ya'll, I done told ya'll everything. I wouldn't have given you all them names if I didn't know everything I knew. I'm not, I'm not no rat, no little snitch like that. I done told y'all everything I knew though. That's everything right there. I'm not going to, come on now.

Campbell: What do you mean by that?

Johnson: [interrupting] that's a snitch though.
[Campbell and Johnson both inaudible because they are talking simultaneously]

Johnson: [beginning inaudible] I gave up my brother. I told 'em what he did and I know he didn't kill her. He was in the car with me. Louis [was] in the car with me. We drove out.

Hargrave: Yeah.

Johnson: I told you everything that I know, sir.

Hargrave: Yes, but you also told us that you didn't take anyone away from the situation. You did. So someone -

Johnson: [inaudible because he interrupted Hargrave] So

No. 14-70024

you say I took someone away?

Hargrave: Huh?

Johnson: So you saying I took someone away?

Hargrave: You and your crew.

Johnson: I didn't take nobody away.

Following a few more questions about the inconsistencies of his statement, Detective Hargrave stopped talking to Johnson. A police officer from Humble, Texas, then entered and asked Johnson questions related to offenses committed in Humble. A few minutes later the interview ended.

2. The Second Recorded Statement

After officers from the Houston Police Department (HPD) arrested Timothy Randle and another friend named Alvie Butler on June 23, 2006, Randle led police to the bodies of Aparece and Ngo. In addition to Randle, HPD homicide investigators spoke with Louis Ervin, Ashley Ervin, and another friend named Tanaisha Samuel that same day. Later in the evening, Johnson was brought from jail to be interviewed about his version of the events. Although detectives had a copy of Johnson's previous statement to Fort Bend County detectives, HPD homicide detective Clement Abbondondalo recorded another interview with Johnson in which he gave more details about the events of June 18th and 19th. Before he questioned Johnson, Abbondondalo read Johnson the required warnings, and Johnson indicated he understood the warnings when he agreed to speak with the detective.

In the statement, Johnson blamed Timothy Randle for getting him and Keithron Fields involved in the case. He admitted to initially ordering Aparece and Ngo out of the car with a shotgun and to driving Aparece's blue Matrix to a wooded area, but claimed Randle was the one who directed them to the crime scene. Johnson also admitted to raping Aparece and to wiping down the car with Fields in order to destroy any fingerprints, but denied killing the couple.

No. 14-70024

He claimed that he fired a pistol near Ngo "just to scare them" and doubted the shot hit anyone, but admitted if he "shot somebody it might would have been the boy." After they had been talking for about twenty-five minutes, Detective Abbondondalo stepped out of the room. When he returned, Johnson chose to terminate the interview.

### 3. Pre-trial Hearings on Johnson's Motions to Suppress

Prior to trial, counsel for Johnson filed motions to suppress both of his statements made to police, and the trial court conducted a separate hearing for each statement. At the first hearing, several witnesses were called to testify about the facts and circumstances surrounding the recording of the first statement, including Detective Hargrave. At the conclusion of the hearing, defense counsel objected that the statement was the fruit of an illegal arrest, that Johnson was not timely magistrated and read his warning on the misdemeanor marijuana possession charge, and that his right to silence was violated after the detectives continued to interrogate him once he invoked his right to counsel around the one-hour, twenty-eight minute mark of the first interview. The court denied the motion to suppress the first hour and twenty-eight minutes of the statement, but did not address counsel's objections to the remainder of the statement because the State did not intend to offer it.

The following day the court held a hearing concerning Johnson's second statement. HPD Detective Abbondondalo testified that Johnson understood the warnings read to him and agreed to speak to detectives, that Johnson was not threatened or coerced, and that Johnson neither expressed reluctance to talk about the offense nor requested an attorney at any point. At the conclusion of the hearing, defense counsel contended the statement should be suppressed because Johnson unambiguously invoked his Fifth Amendment right to counsel during his first recorded statement, thereby tainting the second statement. Although agreeing with counsel that Johnson

7

unambiguously invoked his right to silence and to counsel, the court held that Johnson subsequently waived those rights when he continued to discuss the crime after this invocation.

C. Convictions and Post-Conviction Proceedings

Johnson was subsequently indicted, convicted, and sentenced to death for the robbery, kidnapping, and murder of Maria Aparece. His conviction and sentence were affirmed on direct appeal. *Johnson v. State*, No. 75, 749 (Tex. Crim. App. Jan. 27, 2010) (unpublished), *cert. denied*, 130 S. Ct. 3515 (2010). While his appeal was still pending, Johnson also filed a state application for writ of habeas corpus, which the Texas Court of Criminal Appeals subsequently denied. *Ex parte Johnson*, No. 73, 600-01 (Tex. Crim. App. June 30, 2010).

A year later, Johnson filed a federal petition for habeas corpus relief in the district court below raising a total of eleven points of error, including a claim for relief under *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (intimating the standards for invoking and waiving the right to have counsel present during custodial interrogation). Following the Director's answer, the district court denied relief on all but Johnson's *Edwards* allegation, on which the court ordered the parties to provide additional briefing.[1] After taking into consideration the supplemental briefing of both parties, the district court denied relief on Johnson's *Edwards* claim, concluding that Johnson had not shown that the state courts were unreasonable in finding that the admission of his second police statement did not violate his constitutional rights. However, the court determined that Johnson's arguments on the *Edwards*

---

[1] Specifically, the Court ordered briefing on: (1) whether Johnson made an unambiguous invocation of the right to counsel during his first statement; (2) whether the police tried to clarify his request; (3) whether Johnson reinitiated communication with police; and (4) whether any error in the admission of the second statement harmed the defense.

claim deserve "encouragement to proceed further," and certified the claim for appeal, citing to *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

On December 1, 2014, Johnson filed his merits brief on the *Edwards*/Fifth Amendment claim and separately requested a certificate of appealability (COA) on four other issues raised in his federal habeas petition. In particular, Johnson seeks a certificate of appealability on the following issues: 1) whether his motion to abate in order to amend his petition was erroneously denied; 2) whether the Constitution should prohibit the execution of a severely mentally ill inmate; 3) whether Johnson was mentally competent to waive his right to counsel and to remain silent during the custodial interview with the police; and 4) whether a change in Texas decisional law should require retrial of Johnson's guilt.

## II.    DISCUSSION

### A. Johnson Waived His Fifth Amendment Right to Counsel

In a federal habeas appeal, the district court's findings of fact are reviewed for clear error while conclusions of law are reviewed *de novo*, and we "[apply] the same standards to the state court's decision as did the district court." *Woodfox v. Cain*, 772 F.3d 358, 367 (5th Cir. 2014) (citing *Lewis v. Thaler*, 701 F.3d 783, 787 (5th Cir. 2012)). Because Johnson's claim was adjudicated on the merits in state court, however, he may not obtain federal habeas relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law[]; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011). Section 2254(d)(2) also "commands substantial deference to the factual determinations made by state courts." *Blue v. Thaler*,

665 F.3d 647, 654 (5th Cir. 2011).  As such, "a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain,* 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted); *see Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Rice v. Collins*, 546 U.S. 333, 341 (2006); 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Blue*, 665 F.3d at 654–55 ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

In *Miranda v. Arizona*, the Supreme Court held that, "[i]f the individual [under interrogation] states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. 436, 474 (1966).  As a corollary to the prophylactic rule adopted in *Miranda,* the Court held in *Edwards*, that, once the accused asserts his Fifth Amendment right to counsel, all further interrogation by the authorities must cease "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85. "If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

However, in order to fully invoke his rights under *Miranda*, a defendant must make an unambiguous statement "that can reasonably be construed to

be an expression of a desire for the assistance of an attorney." *Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). Although he need not "speak with the discrimination of an Oxford don," a defendant must "clearly articulate his desire to have an attorney present." *Id.* at 595 (internal quotation marks and citation omitted); *see Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) ("If an accused makes a statement concerning the right to counsel that is ambiguous or equivocal or makes no statement, the police are not required to end the interrogation [] or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." (internal parentheses and citation omitted)).

Assuming, *arguendo*, that Johnson did properly invoke his right to counsel in the first interrogation,[2] he subsequently reinitiated communications with the police and thus waived any rights he may have previously invoked. The district court asked both parties for additional briefing to discuss Johnson's intent as he continued talking, but Johnson failed to elaborate on the meaning of the words spoken after asserting his rights. Johnson also failed to point to any Supreme Court precedent which clearly indicates that an individual who continues to speak with police (about the criminal conduct in question) after invoking his right to counsel or to remain silent has not waived those rights. Our research has similarly not revealed any such case law. Likewise, he failed to show that the state courts were unreasonable in holding that he reinitiated contact by, without interruption, referring to what he had already told police officers about the relevant criminal conduct. Thus, given Johnson's failure to stop talking after saying he did not "want to talk no more,"

---

[2] Both the state trial and appellate courts held that Johnson unequivocally invoked his right to counsel. *See Johnson v. State*, 2010 WL 359018, at *5 (Tex. Crim. App. Jan. 27, 2010) (unpublished). However, we do not put forth an opinion on this issue, and instead, assume, *arguendo*, that his rights were invoked and begin our analysis there.

the state courts could reasonably conclude that the State did not violate Johnson's constitutional rights by putting the substance of his second police statement before the jury.

In sum, Johnson has failed to rebut the state courts' factual determination that, even if he did invoke his right to counsel, he subsequently reinitiated communication with police, thus waiving any invocation of his rights. *See* 28 U.S.C. § 2254(e)(1). He has also failed to show that the state court's factual findings were objectively unreasonable in light of the evidence. *See Schriro*, 550 U.S. at 473. Thus, we AFFIRM the district court's denial of federal habeas relief on this claim.

B. <u>Reasonable Jurists Would Not Debate The District Court's Denial Of Johnson's Motion For Leave To Amend</u>

Johnson also seeks a COA on several claims. First, he seeks a COA to determine whether the district court abused its discretion in denying his motion for leave to amend his federal habeas petition with two new claims.

A petitioner must obtain a COA before he may appeal the district court's denial of federal habeas relief. *Haynes v. Quarterman*, 526 F.3d 189, 192 (5th Cir. 2008); *see* 28 U.S.C. § 2253(c). Under AEDPA, a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." *Slack v. McDaniel,* 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). According to the Supreme Court, this requirement includes a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id*. at 484.

Because this habeas claim was denied on procedural grounds, a COA will only issue if Johnson shows that jurists of reason would find it debatable "whether the petition states a valid claim of the denial of a constitutional right

and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

A motion to amend is reviewed for abuse of discretion. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2009) (internal quotation marks and citation omitted) (en banc).

It is within the sound discretion of the district court to grant a motion to amend, but that discretion is limited by Rule 15(a), "which states that leave shall be given when justice so requires." *Jacobsen*, 133 F.3d at 318 (internal quotation marks and citation omitted). However, it is also within the district court's discretion to deny leave to amend if there is "a substantial reason" to do so. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). One such substantial reason is if the district court determines that amendment would be futile, in which case leave to amend should be denied. *See In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996); *see also DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968) (per curiam). Further, AEDPA's one-year statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

In the district court, Johnson requested either a stay of his proceedings so he could return to state court or for the court to allow amendment of his petition with two new ineffective assistance of counsel (IAC) claims not previously raised. Johnson's first new claim alleged that his trial counsel was ineffective for not presenting any evidence of his psychological and biological mental impairments during the guilt/innocence phase of trial even though such evidence was available. His second new claim alleged that his direct appeal

counsel was ineffective for not challenging trial counsel's representation on that ground.  The district court denied Johnson's request to amend his petition with these new claims because any amendment would be futile.  Specifically, the court found that any new claims would be barred by AEDPA's statute of limitations and subject to dismissal as unexhausted and procedurally barred.[3]

We agree that Johnson's two new claims are time-barred, as they were not filed within AEDPA's one-year statute of limitations.  Johnson's one-year period began to run on June 28, 2010, the date the Supreme Court denied certiorari review of his direct appeal.  However, due to statutory tolling, Johnson had until June 30, 2011, to file his original petition for federal habeas relief.[4]  He timely filed his original petition for federal habeas relief on June 28, 2011.  However, over a year and a half later, Johnson sought to amend his petition to add the two new IAC claims challenging his original conviction.  Because extraordinary circumstances do not exist that would warrant equitable tolling under AEDPA, these new claims are time-barred.[5]  The new IAC claims he now asserts rely on the same evidence of mental illness that was available and that he relied upon in his original federal habeas petition, in which he claimed that he was incompetent to waive his right to counsel and

---

[3] The district court also found that Johnson provided "scant information about the claims he wishes to advance" and has shown no evidence of a mental disease that would "directly rebut the particular *mens rea* necessary for capital murder."

[4] Because "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not count toward any period of limitation," Johnson's state habeas petition tolled the limitations period another two days until June 30, 2011, or one year after the state habeas petition was denied by the state habeas court.  28 U.S.C. § 2244(d)(2); *Ex parte Johnson*, No. 73,600-01 (Tex. Crim. App. June 30, 2010) (unpublished order).

[5] AEDPA is not a jurisdictional bar, and the statute of limitations can be equitably tolled in certain extraordinary circumstances.  *See Holland v. Florida*, 560 U.S. 631, 648 (2010); *see also Davis v. Johnson*, 158 F.3d 806, 810–11 (5th Cir. 1998).  A habeas petitioner is entitled to equitable tolling only if he shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance existed and prevented timely filing. *Holland*, 560 U.S. at 648 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

should be considered ineligible for the death penalty due to his serious mental illness. We see no reason why he could not have raised these claims in his original federal habeas petition.

Further, these claims are also precluded because they are unexhausted, as they were not presented to the state court for review. "Before a federal court can find merit in alleged errors by state courts, a petitioner must have first provided the state's highest court with a fair opportunity to [review] . . . a state prisoner's conviction or sentence." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006). Here, the state court had no opportunity to review the new claims prior to Johnson's filing of his federal petition, even though the "evidence" was available at that time.

Johnson argues that the district court was unreasonable in finding fault for his failure to bring these claims at an earlier date because the IAC claims are premised on the Supreme Court's holdings in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). In *Martinez*, the Court carved out an exception to the rule established in *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991),[6] which "allow[ed] a federal habeas court to find 'cause,' thereby excusing a defendant's procedural default, where [] the claim of 'ineffective assistance of trial counsel' was a '*substantial*' claim." *Trevino*, 133 S. Ct. at 1918 (emphasis added) (citing *Martinez*, 132 S. Ct. at 1318–19).

---

[6] In *Coleman*, the Court stated that "[i]n habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." 501 U.S. at 735. However, the Court then qualified that holding by stating that "[t]his rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Id.* at 735 n.1.

No. 14-70024

A claim is substantial if "the prisoner [] demonstrate[s] that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

However, his reliance on these cases is misplaced. Johnson's ineffective assistance of counsel claim has no merit, as his mental illness would likely not have affected his death penalty sentence. *See ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007) (per curiam) (holding that Fifth Circuit precedent does not exempt a mentally ill petitioner, who is not insane or incompetent, from execution). Thus, the *Martinez* exception does not apply to Johnson's IAC claims, and *Trevino* does not apply for the same reason. *See Trevino*, 133 S. Ct. at 1918. Therefore, because Johnson's new IAC claims are time-barred and procedurally exhausted, reasonable jurists would not debate that the district court did not abuse its discretion in denying Johnson leave to amend his petition for federal habeas relief.

C. Reasonable Jurists Would Not Debate That The Constitution Does Not Prohibit The Execution Of Mentally Ill Persons Who Are Not Incompetent

Because this claim was dismissed on the merits, a COA will only issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

Johnson argues that he is "borderline retarded" and that his mental illness is similar to the mentally retarded persons and children protected from execution by *Atkins v. Virginia*, 536 U.S. 304, 320–21 (2002) and *Roper v. Simmons*, 543 U.S. 551, 568–69 (2005). Although the Constitution prohibits the execution of children and persons whose mental illness render them insane or incompetent, it does not prohibit the execution of petitioners like Johnson. *See Roper*, 543 U.S. at 568–69; *Atkins*, 536 U.S. at 320–21; *Ford v. Wainwright*, 477 U.S. 399, 410 (1986); *see also Barnard v. Collins*, 13 F.3d 871, 876 (5th Cir.

16

1994) (holding that *Ford* prevents the execution of an inmate who is unable to "understand the fact of his impending execution and the reason for it."). Further, neither the Supreme Court nor this circuit has extended the *Atkins/Roper* protections to the mentally ill whose illness does not reach that of incompetency or insanity. *See Ripkowski v. Thaler*, 438 F. App'x 296, 303 (5th Cir. 2011) (per curiam); *see also ShisInday*, 511 F.3d at 521; *In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006) (per curiam); *In re Woods*, 155 F. App'x 132, 136 (5th Cir. 2005) (per curiam). Even so, incompetency-to-be-executed claims do not become justiciable until an execution becomes imminent, and no execution date has yet been set for Johnson. *See Panetti v. Quarterman*, 551 U.S. 930, 947 (2007); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998). Thus, reasonable jurists could not debate that the district court was correct in rejecting Johnson's argument that mental illness should prohibit his execution.

D. Reasonable Jurists Would Not Debate The District Court's Rejection of Johnson's Allegation of Incompetency To Waive His Rights During The Police Interrogations

Because the district court dismissed this claim on procedural grounds, a COA will only issue if Johnson shows that jurists of reason would find it debatable "whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. In the alternative, the district court dismissed this claim on the merits. Therefore, a COA should issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*

Johnson argues that although his claims could have been brought on direct appeal, they were not required to be. We disagree. The state habeas

court held that Johnson's claims were procedurally defaulted because they could have been but were not raised on direct appeal in state court and so may not now be raised in this post-conviction writ.  Because Johnson failed to bring these claims in state court, he may only bring these claims to the federal habeas court if he shows the claims meet the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  However, he has not shown, nor presented any evidence, that his claims meet the *Strickland* deficient performance and prejudice test.  *See id.*  He only argues that "this issue could have been brought on direct appeal but it is not mandatory that it be so," and that an exception to the direct appeal rule has been applied in "cases where the trial record did not include enough information to resolve the issue."  He presents no argument or evidence that his claims fall into the exception, nor could he, as the evidence he now advances regarding his mental illness was available at the time he sought state habeas relief.  Thus, pursuant to Texas law, these claims should have been brought on direct appeal.  *See Rojas v. State*, 981 S.W.2d 690, 691 (Tex. Crim. App. 1998).  As such, reasonable jurists would not debate that Johnson's claims are procedurally defaulted.

E. <u>Reasonable Jurists Would Not Debate The District Court's Rejection of Johnson's Argument That Changes In Texas Decisional Law Warrant A New Trial</u>

Because this claim was dismissed on its merits, a COA will only issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.

When a federal court reviews a petition for habeas relief from a state prisoner, its inquiry is restricted to "whether the petitioner is in custody in violation of the Constitution or laws or treaties of the United States."  *Coleman*, 501 U.S. at 730 (internal quotation marks and citation omitted).  It is not "the

province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

Johnson argues that the change in Texas state law in *Ruffin v. State*, 270 S.W.3d 592 (Tex. Crim. App. 2008), recognizes the right of a criminal defendant to present evidence of mental illness to rebut his capacity to knowingly kill. He further argues that jurists of reason could disagree with the district court's designation of this argument as one of state law and should have, instead, characterized it as a question of "constitutional magnitude." We disagree.

Firstly, *Ruffin* is not a change in Texas decisional law; it is merely a restatement of *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005). *See Ruffin*, 270 S.W.2d at 596 ("We repeat and affirm our holding in *Jackson* that 'relevant evidence may be presented . . . to negate the *mens rea* element.") (internal citation omitted). However, even if it were a change in Texas decisional law, it would not be a ground warranting a new trial, as this court cannot disturb a state court's interpretation of its own law. *See Bradshaw*, 546 U.S. at 76. The state habeas court made a determination on the admissibility of evidence regarding Johnson's mental state, which is a purely state-law concern. *See Estelle*, 502 U.S. at 67–68; *see also Phillips v. Cockrell*, No. 4:02-CV-1036-A, 2003 WL 21730650, at *4 (N.D. Tex. July 21, 2003) (stating that criminal intent is a matter of state law).

Secondly, Johnson's argument that the 2008 *Ruffin* decision opened the door for the presentation of evidence to rebut his *mens rea* is in error. Prior to *Ruffin*, in 2005, the Texas Court of Criminal Appeals held that testimony of mental disease or defect may be introduced to rebut the *mens rea* for the

charged offense. *See Jackson*, 160 S.W.3d at 573–74. *Jackson* was decided over two years prior to Johnson's trial, and nothing hindered him from introducing the evidence of mental impairment he now claims he should be allowed to present. As such, the district court did not err in rejecting this claim, and reasonable jurists would not debate this rejection.

### III.    CONCLUSION

For the reasons stated herein, we AFFIRM the denial of Johnson's federal habeas relief on his Fifth Amendment claim and DENY his application for a COA.