# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2025

Lyle W. Cayce
Clerk

No. 23-70002

Dexter Johnson,

*Petitioner—Appellee*,

*versus*

Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-3047

_____

Before Southwick, Graves, and Higginson, *Circuit Judges*.

Per Curiam:[*]

We authorized a prisoner's petition to file a second or successive application for a writ of habeas corpus. The district court determined the prisoner met the statutory requirements for a successive application and denied the State's motion to dismiss. The district court then granted the

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-70002

State's motion to certify a question for interlocutory appeal.  We answer the question and AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

Dexter Johnson was convicted and sentenced to death for the 2006 robbery, kidnapping, and murder of 23-year-old Maria Aparece.  The details of his offense are recounted in *Johnson v. Stephens*, 617 F. App'x 293 (5th Cir. 2015).  The procedural history of Johnson's state habeas claims and his initial federal habeas proceedings are recounted in our decision that authorized Johnson to file a second or successive federal habeas application under 28 § U.S.C. 2244(b)(2)(A).  *In re Johnson,* 935 F.3d 284, 287–88 (5th Cir. 2019).

Johnson filed his second or successive habeas application in the United States District Court for the Southern District of Texas.  The application contained a single claim based on *Atkins v. Virginia*, 536 U.S. 304 (2002).  The State moved to dismiss the petition as impermissibly successive and untimely.  The district court denied the State's motion to dismiss and held an evidentiary hearing.  After the hearing, the State renewed its motion to dismiss and urged the district court to answer "whether an *Atkins* claim was functionally unavailable to Johnson during the pendency of his initial federal habeas proceedings."  The district court denied the State's motion because it determined Johnson properly demonstrated his *Atkins* claim was previously unavailable and his claim was timely under the equitable tolling doctrine.

The State moved to certify the district court's order for interlocutory appeal under 28 U.S.C. § 1292(b).  The State sought to certify the following issues for appeal: (1) "[w]hether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)"; (2) "[w]hether an attorney's intentional, strategic decisions to not raise a claim he deemed meritless can ever

2

constitute extraordinary circumstances"; and (3) "[w]hether a *prima facie* showing of intellectual disability exempts a petitioner from the diligence requirement of equitable tolling." The district court certified only the first issue.

## STANDARD OF REVIEW

We review certified orders *de novo*. *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010). "Under § 1292(b), it is the order, not the question, that is appealable." *Id.* at 398. Though we are not limited to considering only the certified issue, we are limited "to reviewing 'questions that are material to the lower court's certified order.'" *Id.* at 398 (quoting *Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 211 n.4 (5th Cir. 1992)). Although this court is permitted to consider each question raised by the State, we will only address the question certified by the district court: "Whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)?"

## DISCUSSION

Federal law generally prohibits second or successive applications for a writ of habeas corpus. 28 U.S.C. § 2244. To file a second or successive application, the applicant must obtain authorization from the appropriate court of appeals. § 2244(b)(3)(A). Claims that were "presented in a prior application [will] be dismissed." § 2244(b)(1). Claims that were "not presented in a prior application [will also] be dismissed," except in narrow circumstances. § 2244(b)(2). Relevant here, the application may proceed if "the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2244(b)(2)(A).

In his motion for authorization to file a successive application, "Johnson argue[d] that *Atkins* is a new rule of constitutional law that is

retroactive and that his claim was previously unavailable because the latest professional diagnostic manual changed the framework for intellectual disability." *In re Johnson*, 935 F.3d at 291–92. In *Atkins v. Virginia*, the Supreme Court held that executions of the mentally disabled violate the Eighth Amendment. 536 U.S. at 321. Notably, "*Atkins* was decided long before Johnson even committed his crimes." *Johnson*, 935 F.3d at 292. Nevertheless, we agreed with Johnson that *Atkins* should be applied retroactively to his case, "counterintuitively perhaps, but not unreasonably, with the full weight of our conclusion being borne by this court's recent decision in *In re Cathey*, 857 F.3d 221 (5th Cir. 2017)." *Id.*

Cathey, like Johnson, filed his first habeas petition without an *Atkins* claim although *Atkins* had already been decided. *Cathey*, 857 F.3d at 227. Cathey argued that an *Atkins* claim was nonetheless previously unavailable to him because it was "practically unavailable" until courts recognized a phenomenon called the Flynn Effect and he obtained evidence from the State suggesting his true score was lower than he initially believed.[1] *Id.* at 227–28. At the time of his first application, Cathey believed his IQ score was 77, which was not within the *Atkins* range at the time. *Id.* at 227. Later, it came to light that his score was more likely 73, which was within the *Atkins* range. *Id.* In his motion for authorization to file a second or successive application, he argued that "he did not know about the problem of aging norms nor the State's evidence of a lower IQ score, and thus had no reason to pursue an *Atkins* claim that nobody else had won and only one person had even tried."

---

[1] "The Flynn Effect 'is a phenomenon positing that, over time, standardized IQ test scores tend to increase with the age of the test without a corresponding increase in actual intelligence in the general population. Those who follow the Flynn [E]ffect adjust for it by deducting from the IQ score a specified amount for each year since the test was normalized.'" *In re Cathey*, 857 F.3d at 227 (quoting *Wiley v. Epps*, 625 F.3d 199, 203 n.1 (5th Cir. 2010), *as revised* (Nov. 17, 2010)).

*Id.* at 228 (quotation marks omitted). We determined that "a claim must have some possibility of merit to be considered available" and that Cathey had made a *prima facie* showing that his *Atkins* claim was previously unavailable to him. *Id.* at 232–234.

With that background in mind, we now turn to the certified question: "Whether there can be judicially created exceptions to 28 U.S.C. § 2244(b)(2)(A)?" The answer is no. Section 2244(b)(2) is jurisdictional in nature. *See Panetti v. Quarterman*, 551 U.S. 930, 942, 947 (2007). Courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

According to the State, we have gone beyond proper statutory interpretation and created such an exception. The district court also characterized our holding in *Cathey* as "read[ing] a futility exception into [S]ection 2244(b)(2)(A)." Despite the label given by the State and the district court, this court did not create any exceptions to the requirements of Section 2244(b)(2)(A) in *Cathey*. Instead, we interpreted the phrase "previously unavailable" in light of our precedents that allowed for "a gray area of previous unavailability despite technical availability." *Cathey*, 857 F.3d at 230. It is appropriate for courts to interpret statutes, even jurisdictional statutes like Section 2244(b)(2)(A). *See Tyler v. Cain*, 533 U.S. 656, 662–63 (2001) (interpreting "made" to mean "held" for purposes of Section 2244(b)(2)(A)).

Therefore, we understand the parties' question more accurately to be this: Whether "previously unavailable" can be read in the way *Cathey* instructs, requiring the claim have had "some possibility of merit" for it to be considered previously available for purposes of Section 2244(b)(2)(A)? In answer to that question, we affirm our interpretation of "previously unavailable" in *Cathey* as the correct interpretation. A claim is not

No. 23-70002

automatically considered previously available simply because it was technically available when a prior habeas application was filed. Instead, "a claim must have some possibility of merit to be considered available." *Cathey*, 857 F.3d at 232.

AFFIRMED.